1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                   **CENTRAL DISTRICT OF CALIFORNIA**

10

11  UNITED SAFEGUARD              )   CV 15-3998 RSWL (AJWx)
    DISTRIBUTORS ASSOCIATION,     )
12  INC., a Georgia               )
    Corporation; GREG SCHOB, an   )   **ORDER re: DEFENDANTS'**
13  individual; VICKI SCHOB, an   )   **MOTION TO DISMISS FIRST**
    individual; and SCHOB AND     )
14  SCHOB, INC., a California      )   **AMENDED COMPLAINT AS TO**
    corporation,                  )   **THE SCHOB PLAINTIFFS**
15                                )
                  Plaintiffs,     )   **PURSUANT TO Fed. R. Civ.**
16                                )   **P. 12(b)(2) and 12(b)(6)**
        v.                        )
17                                )   [26]
                                  )
18  SAFEGUARD BUSINESS SYSTEMS,   )
    INC., a Delaware              )
19  corporation; SAFEGUARD        )
    ACQUISITIONS, INC., a         )
20  Delaware corporation;         )
    DELUXE CORPORATION, a         )
21  Minnesota corporation; and    )
    DOES 1-10,                    )
22                                )
                  Defendants.     )
23  _____)

24       Currently before the Court is Defendants Safeguard

25  Business Systems, Inc. ("SBS"), Safeguard Acquisitions,

26  Inc. ("SAI"), and Deluxe Corporation's ("Deluxe")

27  (collectively, "Defendants") Motion to Dismiss First

28  Amended Complaint as to the Schob Plaintiffs Pursuant

                                1

1   to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) ("Motion")

2   [26].

### I.   INTRODUCTION

4       Defendants' Motion arises out of Plaintiffs United

5   Safeguard Distributors Association, Inc. ("USDA"), Greg

6   and Vicki Schob, and Schob and Schob, Inc.'s

7   (collectively, "the Schobs") (USDA and the Schobs

8   collectively known as "Plaintiffs") Action against

9   Defendants for Declaratory Judgment, Breach of

10  Contract, Breach of the Covenant of Good Faith and Fair

11  Dealing, Tortious Interference with Contractual

12  Relations, Intentional Interference with Prospective

13  Economic Advantage, Intentional Misrepresentation,

14  Negligent Misrepresentation, Conversion, and

15  Accounting.  <u>See</u> First Amend. Compl. ("FAC") [17].

16      For the reasons set forth below, this Court **GRANTS**

17  **in part and DENIES in part** Defendants' Motion to

18  Dismiss First Amended Complaint as to the Schob

19  Plaintiffs Pursuant to Fed. R. Civ. P. 12(b)(2) and

20  12(b)(6) [26].

### II.   BACKGROUND

22  **A.   <u>Factual Background</u>**

23      1.   <u>The Parties</u>

24      Plaintiff USDA is incorporated in Georgia and has

25  an office in La Mirada, California.  FAC ¶ 27.

26  Plaintiff Schob & Schob, Inc. is incorporated in

27  California with its principal office in Fresno,

28  California.  <u>Id.</u> at ¶ 29.  Plaintiffs Vicki and Greg

2

1   Schob are individuals residing in or near Fresno,
2   California.  Id. at ¶¶ 30-31.
3        Defendant SBS is a Delaware corporation with its
4   principal place of business in Dallas, Texas.  Id. at ¶
5   32.  Defendant SAI is a Delaware corporation with its
6   principal place of business in Dallas, Texas.  Id. at ¶
7   33.  Defendant Deluxe is a Minnesota corporation with
8   its principal place of business in Shoreview,
9   Minnesota.  Id. at ¶ 34.  Deluxe, SBS, and SAI are
10  sellers of Safeguard products, including business forms
11  and systems, apparel, and other business services to
12  small businesses.  Id. at ¶ 1.  Deluxe acquired SBS in
13  2004.  Id. at ¶ 6.  SAI is a wholly-owned subsidiary of
14  Deluxe.  Id. at ¶ 12.
15       2.  Plaintiffs' Claims in their FAC
16            a.  *Plaintiffs' Seek Declaratory Judgment as*
17                *to all Defendants.*
18       In their First Amended Complaint, Plaintiffs seek a
19  declaratory judgment against all Defendants[1], while the
20
21       [1]Plaintiffs seek a judicial declaration as follows: (a) The
     BODP fees violate the SBS Distributor Agreements; (b) SBS
22   Distributors can purchase from any otherwise qualified Approved
     Vendors and are not contractually mandated to purchase from
23   Deluxe; (c) Deluxe and SBS have no right to inflate shipping and
     handling costs under the SBS Distributor Agreements; (d) SBS
24   Distributors are not required to purchase products from Preferred
     Suppliers; (e) SBS and Deluxe are required to enforce the
25   Customer Protection provisions of the SBS Distributor Agreements;
     (f) SBS and Deluxe cannot require a general release as a
26   condition to the transfer of a SBS Distributor franchise; (g)
     under the SBS Distributor Agreements, Deluxe and SBS have no
27   right to retain "rebates" from the Preferred Supplier Program or
     demand payment terms of 2% Net 30.  Id. at ¶¶ 97, 108, 128, 152,

1  remaining ten claims are brought specifically by the
2  Schobs against various Defendants.  _Id._ at ¶¶ 253-261.
3          b. *The Schobs' Claims as to Various Defendants.*
4      The Schobs bring the remaining ten claims in the
5  First Amended Complaint, independently of Plaintiff
6  USDA, against various Defendants: Breach of Contract,
7  Breach of the Covenant of Good Faith and Fair Dealing,
8  Tortious Interference with Contractual Relations,
9  Intentional Interference with Prospective Economic
10  Advantage, Intentional Misrepresentation, Negligent
11  Misrepresentation, Conversion, and Accounting.  See
12  generally FAC.
13  **B.   Procedural Background**
14      On July 2, 2015, USDA filed its First Amended
15  Complaint including Plaintiffs Vicki Schob, Greg Schob,
16  and Schob and Schob, Inc. [17].  On July 20, 2015
17  Defendants filed two Motions to Dismiss as to
18  Plaintiffs USDA and the Schobs, respectively [24, 26],
19  concurrently with Defendants' Request for Judicial
20  Notice in Support of Defendants' Motion to Dismiss
21  First Amended Complaint as to Plaintiff [USDA] [25].
22  On July 28, 2015, Plaintiffs submitted their respective
23  Oppositions to Defendants' Motion to Dismiss [30, 31].
24  On August 4, 2015, Defendants submitted their Replies
25  [33, 35], concurrently with their Supplemental Request
26  for Judicial Notice [34].
27
28  191, 225, 252; see also id. at ¶¶ 253-261.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# III.   DISCUSSION

**A.   <u>Legal Standard</u>**

   1.   <u>Judicial Notice</u>

   A court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

   2.   <u>Motion to Dismiss Pursuant to Rule 12(b)(2)</u>

   A party may move for dismissal of an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Fed. R. Civ. P. 12(b)(2).

      a.   *Personal Jurisdiction over Non-Resident*

   "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant."  <u>Doe v. Unocal Corp.</u>, 248 F.3d 915, 921-922 (9th Cir. 2001). To make a prima facie showing, the plaintiff need only allege facts that, if true, would support a finding of jurisdiction.  <u>Ballard v. Savage</u>, 65 F.3d 1495, 1498 (9th Cir. 1995).  Where there is no applicable federal statute governing jurisdiction, the exercise of personal jurisdiction over a nonresident defendant requires two findings: 1) the forum state's laws provide a basis for exercising personal jurisdiction, and 2) the assertion of personal jurisdiction comports with due process.  <u>Adv. Skin & Hair, Inc. v. Bancroft</u>, 858 F. Supp. 2d 1084, 1087 (C.D. Cal. March 14, 2012).

1  "California's long-arm statute extends jurisdiction to
2  the limits of due process." <u>Unocal Corp.</u>, 248 F.2d at
3  923 (citing Cal. Code Civ. P. § 410.10).   "Due process
4  requires that a defendant have 'certain minimum
5  contacts with the forum such that the maintenance of
6  the suit does not offend traditional notions of fair
7  play and substantial justice.'"   <u>Id.</u> (internal
8  alterations omitted).   The defendant's contacts "must
9  be 'such that the defendant should reasonably
10 anticipate being haled into court'" in the forum.   <u>Id.</u>
11 at 1088 (internal alterations omitted).

12         b.   *Specific Personal Jurisdiction*

13     The Ninth Circuit applies a three-prong test to
14 determine whether the exercise of specific jurisdiction
15 comports with due process: "1) the defendant must
16 purposefully avail herself of . . . the forum by some
17 affirmative act or conduct; 2) the plaintiff's claim
18 must arise out of, or result from, the defendant's
19 forum-related contacts; and 3) the extension of
20 jurisdiction must be 'reasonable.'"   <u>Adv. Skin & Hair,</u>
21 <u>Inc. v. Bancroft</u>, 858 F. Supp. 2d 1084, 1089 (C.D. Cal.
22 March 14, 2012) (citing <u>Roth v. Garcia Marquez</u>, 942
23 F.2d 617, 620–21 (9th Cir. 1991)).   The plaintiff bears
24 the burden of satisfying the first two prongs, and if
25 the plaintiff succeeds, "the burden then shifts to the
26 defendant to present a compelling case that the
27 exercise of jurisdiction would not be reasonable." <u>Id.</u>
28 (internal quotation marks omitted).

1    Under the first prong of specific jurisdiction,
2  where purposeful availment is "most often used in suits
3  sounding in contract," and purposeful direction is
4  "most often used in suits sounding in tort." Brayton
5  Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128
6  (9th Cir. 2010).  The Ninth Circuit evaluates
7  "purposeful direction" for an intentional tort using
8  the three-part "Calder-effects" test.  Holland Am., 485
9  F.3d at 459.  Under the "effects test," "'the defendant
10 allegedly must have (1) committed an intentional act,
11 (2) expressly aimed at the forum state, (3) causing
12 harm that the defendant knows is likely to be suffered
13 in the forum state.'" Brayton, 606 F.3d at 1128.  The
14 defendant need not have any physical contact with the
15 forum.  Id.
16    3.  Motion to Dismiss Pursuant to Rule 12(b)(6)
17    Federal Rule of Civil Procedure 12(b)(6) allows a
18 party to move for dismissal of one or more claims if
19 the pleading fails to state a claim upon which relief
20 can be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal
21 can be based on "the absence of sufficient facts
22 alleged under a cognizable legal theory." Balistreri
23 v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.
24 1990).  A complaint must "contain sufficient factual
25 matter, accepted as true, to state a claim to relief
26 that is plausible on its face." Ashcroft v. Iqbal, 556
27 U.S. 662, 678 (2009) (internal quotation marks
28 omitted).

4.   <u>Federal Courts' Liberal Policy Regarding Leave
         to Amend</u>

Federal Rule of Civil Procedure 15(a) provides that a party may amend their complaint once "as a matter of course" before a responsive pleading is served.  Fed. R. Civ. P. 15(a).  After that, the "party may amend the party's pleading only by leave of court or by written consent of the adverse party and leave shall be freely given when justice so requires."  <u>Id.</u>  Leave to amend lies "within the sound discretion of the trial court." <u>United States v. Webb</u>, 655 F.2d 977, 979 (9th Cir. 1981).

**B.   <u>Analysis & Recommendation</u>**

1.   <u>Judicial Notice</u>

a.   *Defendants' Supplemental Request for
           Judicial Notice* [34]

In their Supplemental Request for Judicial Notice [34], Defendants request that this Court judicially notice the following items: (1) Claimant's Request for Production of Documents to SBS, SAI, and related parties, served in the related Arbitration; (2) Defendant SAI's Responses to Plaintiff T3 Enterprises, Inc.'s First Request for Production of Documents served in the Idaho action; (3) Defendants SBS and SAI's Responses to Plaintiff Thurnston Enterprises, Inc.'s Amended First Request for Production of Documents served in the Idaho action; (4) The Amended Stipulation Regarding Designation of Certain Confidential Documents

1  filed in the Idaho action.  Defs.' Supp. Req. for
2  Judicial Notice [34].
3      Grants of judicial notice are a matter of judicial
4  discretion.  See United States v. Nat. Med. Enters.,
5  Inc., 792 F.2d 906, 912 (9th Cir. 1994).  Discovery
6  items such as requests for discovery and responses to
7  requests for discovery are not proper subjects for
8  judicial notice because they are not "self-
9  authenticating" and thus cannot be verified.  See
10  Garber v. Heilman, Case No. No. CV 08-3585-DDP (RNB),
11  2009 WL 409957, at *2 (C.D. Cal. Feb. 18, 2009); see
12  also Garber v. Flores, Case No. CV 08 4208DDPRNB, 2009
13  WL 1649727, at *1 (C.D. Cal. June 10, 2009).  Further,
14  the court may deny a request for judicial notice of
15  facts that are not relevant to the question at issue.
16  Plevy v. Haggerty, 28 F.Supp.2d 816, 821 (C.D. Cal.
17  Aug. 21, 1998).
18      This Court **DENIES** Defendants' Supplemental Request
19  for Judicial Notice [34] as to items one through three,
20  as these items are discovery requests and responses and
21  are thus not "self-authenticating" and cannot be
22  verified.  This Court further **DENIES** Defendants'
23  Request as to item four as this joint stipulation from
24  the Idaho action between Defendants and another party
25  is not relevant in deciding the present Motion to
26  Dismiss.
27      2.  Defendants' Motion to Dismiss Plaintiffs'
28          Claims as to Deluxe and SAI for Lack of

<u>Personal Jurisdiction under F.R.C.P. 12(b)(2).</u>

a.   *This Court lacks general personal jurisdiction over Defendants Deluxe and SAI.*

Pursuant to the Supreme Court's holding in <u>Daimler AG v. Bauman</u>, an entity is subject to general jurisdiction where it is incorporated or where its principal place of business is located.   134 S.Ct. 746, 760 (2014).   Only in "an exceptional case" is general jurisdiction otherwise available.   <u>Id.</u> at 773, fn 19.

Deluxe is incorporated in Minnesota with its principal place of business in Shoreview, Minnesota. FAC ¶ 34.   SAI is incorporated in Delaware with its principal place of business in Dallas, Texas.   <u>Id.</u> at ¶ 33.   Neither Deluxe nor SAI are domiciled in California, nor do they have their principal places of business in California.   Further, Plaintiffs' First Amended Complaint "contains no effort by the Schobs to demonstrate that this is an 'exceptional case' where general personal jurisdiction over a corporation 'is appropriate in a state other than its principal place of business or state of incorporation."   <u>Id.</u> at 20:9-12. (citing <u>Carpenter v. Sikorsky Aircraft Corp.</u>, No. CV14-07793, 2015 WL 1893146 at *7 (C.D. Cal. Apr. 27, 2015).   As such, this Court declines to exercise general personal jurisdiction over Defendants Deluxe and SAI.

b.   *Specific jurisdiction over Defendants SAI*

10

1      *and Deluxe.*

2          For this Court to exercise specific personal

3     jurisdiction over Defendants Deluxe and SAI, in

4     accordance with due process, Plaintiffs must allege

5     sufficient facts to plausibly show that Deluxe and SAI

6     (1) purposefully availed themselves of the forum by

7     some affirmative act or conduct, (2) the Plaintiffs'

8     claims arise out of, or result from, the Defendants'

9     forum-related contacts, and (3) the extension of

10    jurisdiction is reasonable.[2]  <u>Adv. Skin & Hair, Inc. v.</u>

11    <u>Bancroft</u>, 858 F. Supp. 2d 1084, 1089 (C.D. Cal. 2012)

12    (citing <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 620-21

13    (9th Cir. 2011)).  Plaintiffs bear the burden of

14    satisfying the first two prongs, and if the Plaintiffs

15    succeed, "the burden then shifts to the Defendant[s] to

16    present a compelling case that the exercise of

17    jurisdiction would not be reasonable."  <u>Id.</u> (internal

18    quotation marks omitted).  As to the second prong,

19    "[t]he 'express aiming requirement is satisfied when

20    the defendant is alleged to have engaged in wrongful

21    conduct targeted at a plaintiff whom the defendants

22    knows to be a resident of the forum state.'"

23    <u>CollegeSource</u>, 653 F.3d at 1077.

24    _____

25        [2]For claims involving tortious conduct, courts employ a
      purposeful direction analysis for the first prong of the Ninth

26    Circuit's specific personal jurisdiction test.  <u>Schwarzenegger v.</u>
      <u>Fred Martin Motor Co.</u>, 374 F.3d 797, 802 (9th Cir. 2004).

27    Plaintiffs have alleged tortious conduct against both Defendants
      Deluxe and SAI, so a "purposeful direction" analysis is

28    appropriate."  <u>Id.</u>

                             i.   *This Court has specific personal*

                                  *jurisdiction over Defendants Deluxe*

                                  *and SAI.*

                           1.   Purposeful availment/direction

                              A.   Intentional Act

Plaintiffs plead an intentional act by Defendant SAI: In their First Amended Complaint, the Schobs bring a claim for intentional misrepresentation, alleging that SBS and SAI induced the Schobs into purchasing a distiburship by promising that "if [the Schobs] acquired QBS that SAI and SBS would provide a software tool" that would make the acquisition more beneficial and feasible.  FAC ¶¶ 166, 315-322.  Furthermore, Plaintiffs allege that SAI engaged in tortious interference with contractual relations by, among other conduct, "[c]ontinuing to solicit, service and supply Schobs' Protected Customers in total disregard for the Schobs' Customer Protection rights."  Id. at ¶ 280.

Plaintiffs plead an intentional act by Defendant Deluxe: Plaintiffs allege that Deluxe, having knowledge of the Schob Agreement and its accompanying Customer Protection rights, took various actions adverse to Schobs' contractual rights under the Schob Agreement, amounting to tortious interference with contractual relations.  Id. at ¶¶ 276-287.  Further, Plaintiffs allege that Deluxe intentionally, and without justification, interfered with the Schobs' prospective acquisitions of new distributorships ("Schob

1  Acquisition Agreements"). _Id._ at ¶¶ 288-298.

2  As such, the Court finds that Plaintiffs have made

3  a prima facie showing that Defendants Deluxe and SAI

4  committed intentional acts. _See_ _Harris Rutsky & Co._

5  _Ins. Serv., Inc. v. Bell & Clements Ltd._, 328 F.3d

6  1122, 1131 (9th Cir. 2003).

7                     B.   Expressly Aimed at Forum

8  Regarding whether the intentional act is "expressly

9  aimed" at the forum, the Ninth Circuit has found that

10  "[t]he 'express aiming requirement is satisfied when

11  the defendant is alleged to have engaged in wrongful

12  conduct targeted at a plaintiff whom the defendants

13  knows to be a resident of the forum state."

14  CollegeSource, 653 F.3d at 1077; _see also_ _Harris_

15  _Rutsky_, 328 F.3d at 1131.

16  Here, the Schobs plausibly allege that Deluxe and

17  SAI acquired California based distributorships, such as

18  QBS, and offered them for resale to the SBS

19  Distributors, who in turn offered them for resale to

20  the Schobs. FAC ¶ 164. Plaintiffs allege that Deluxe

21  and SAI were directly involved in the resale of QBS to

22  the Schobs, and in fact, that Sutton, Vice President

23  and Director for SAI, attended the meeting that

24  initiated the sale. _Id._ at ¶ 166. Further, the Schobs

25  allege that Deluxe took various actions adverse to

26  Schobs' contractual rights under the Schob Agreement,

27  _id._ at ¶¶ 276-287, including the management of

28  California distributorships that solicited sales in

violation of the Schobs' Customer Protection

violations.  Id. at ¶¶ 211, 281.  As such, the Court

finds that the Plaintiffs have made a prima facie

showing that Defendants Deluxe and SAI expressly aimed

their intentional tortious acts at California.  See

Harris Rutsky, 328 F.3d at 1131.

## C.   Knowledge Harm Will Likely Occur in Forum

Regarding their intentional and negligent

misrepresentation claims against SAI, Plaintiffs allege

that "[w]hen they made the representation, SBS, SAI and

their agent knew it was false or made the

representation recklessly and without regard for its

truth.  SBS, SAI and their agent intended that the

Schobs would rely on the representation."  FAC ¶ 318.

Regarding their tortious interference with contractual

relations claims against Deluxe, Plaintiffs allege that

"[a]t the time SBS and Deluxe took action adverse to

the Schob Acquisition Agreements, SBS and Deluxe knew

that the Schobs would not (and could not) continue its

contractual relationship with [the distributorships]."

Id. at ¶ 294.

As Vicki and Greg Schob are residents of

California, id. at ¶¶ 30, 31, and Schob and Schob, Inc.

is a California corporation, id. at ¶ 29, and the

Schobs plausibly allege that they regularly engaged in

business with SAI as distributors of Safeguard

products, id. at ¶¶ 66-68, the Court finds that

14

1  Plaintiffs have made a prima facie showing of this
2  final prong of purposeful direction.  *Harris Rutsky*,
3  328 F.3d at 1131.

4                    2.  *Claims Arise Out of Contacts*

5       "A lawsuit arises out of a defendant's contacts
6  with a forum state if there is a direct nexus between
7  the claims being asserted and the defendant's
8  activities in the forum."  Adv. Skin & Hair, 858 F.
9  Supp. 2d at 1090.  The Ninth Circuit applies a "but
10 for" test to determine whether an action arises out of
11 the defendant's contacts with the forum.  Id.

12      Here, Plaintiffs have alleged that "but for" SBS
13 and SAI's misrepresentation, they would not have
14 purchased QBS, and thus would not have incurred "at
15 least $150,000 a year in added labor costs, Sourced
16 Fees, the cost of invoices...", and other related
17 expenses.  FAC ¶¶ 320, 328.  The Schobs allege that
18 they "reasonably relied on the representation by
19 acquiring QBS....and [t]he Schobs had no reason to
20 believe that SBS and SAI would not follow through on
21 Sutton's representation."  Id. at ¶¶ 319, 327.  As
22 such, the Court finds that Plaintiffs have made a prima
23 facie showing that their claims arise out of SAI's
24 contacts with California.  See Harris, 328 F.3d at
25 1131-32.

26      Further, Plaintiffs allege that "but for" Deluxe's
27 alleged interference with the Schob Acquisition
28 Agreements, the Schobs would have proceeded

                              15

successfully in acquiring the distributorships. Plaintiffs allege that "SBS and Deluxe also knew that the Schobs were fully qualified to take over [the distributorships], that the Schob Acquisition Agreements would result in significant value to the schobs, and that the transaction required SBS's consent, which could not be unreasonably withheld." Id. at ¶ 291.

This Court finds that the Schobs have plausibly alleged that their claims arise out of Defendants SAI and Deluxe's contacts with the forum.

### 3.   Reasonableness

"If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable."[3] Adv. Skin & Hair, 858 F. Supp. 2d at 1091 (internal quotation marks omitted); Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1400 (9th Cir. 1986).

As to the first factor, as discussed above,

_____

[3]The Ninth Circuit assesses reasonableness by considering the following factors: (1) the extent of the defendant's purposeful interjection into the forum; (2) the burden on the defendant in litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. Adv. Skin & Hair, 858 F. Supp. 2d at 1091.

Plaintiffs have plausibly alleged that Defendants SAI and Deluxe have purposefully directed activities at the forum state.  Further, the second factor, which considers the burden that litigating in the forum imposes on the defendant, "must be examined in light of the corresponding burden on the plaintiff." Core-Vent Corp. v. Nobel Industries AB, 11 F.3d 1482, 1489 (9th Cir. 1993).  As all Plaintiffs are residents of California, the burden on the Plaintiffs to travel to and from the alternative forums suggested by Defendants, Minnesota or Texas, would be great.  Apart from stating that Deluxe and SAI's relevant witnesses and documents would be more easily accessible in their states of incorporation, Defendants have not presented a "compelling case" that it would be overly burdensome to require SAI or Deluxe to defend themselves in California litigation that already involves their affiliated entity SBS and addresses similar and often overlapping claims amongst the co-Defendants.

The third factor evaluates "the extent of any conflict with the sovereignty" of the defendant's home country or state and the fourth factor "considers California's interest in adjudicating the controversy." Id.  Defendants have not presented any argument, apart from the mere recitation of this element, that this forum's exercise of jurisdiction over Deluxe and SAI would conflict with the sovereignty of their states of incorporation.  Reply 6:20-23.  In fact, the parties

concede that Pennsylvania law, not Minnesota or Texas law, governs the Schob Agreement and, in effect, the dispute.  Mot. to Dismiss 5:5-16.  As to the fourth factor, as Plaintiffs are California residents, and many of Plaintiffs' claims arise from conduct directed at California, this factor weighs in favor of this forum's jurisdiction.

The fifth factor considers the most efficient judicial resolution of the controversy, primarily focusing on the location of the evidence and the witnesses.  Core-Vent Corp., 11 F.3d at 1488.  This factor weighs slightly against this Court's exercise of jurisdiction as Defendants' allege that their witnesses and evidence are located in their respective states of incorporation.  The sixth factor is the importance of the forum to a plaintiff's interest in convenient and effective relief, though "neither the Supreme Court nor [the Ninth Circuit] has given much weight to inconvenience to the Plaintiff."  Id.; Ziegler v. Indian River County, 64 F.3d 470, 476 (9th Cir. 1995).  The final factor, the availability of an alternative forum, weighs slightly against reasonableness because Defendant raised Minnesota and Texas as alternative forums.  Upon consideration of the above factors, this Court finds that Defendants did not present a "compelling case" that this Court's exercise of jurisdiction over Defendants Deluxe and SAI would be unreasonable, and thus specific jurisdiction exists.

3.    Defendants' Motion to Dismiss for Failure to
State a Claim Under F.R.C.P. 12(b)(6)

a.    *Pennsylvania law applies to interpret the
Schob Agreement.*

"When a federal court sits in diversity, it must
look to the forum state's choice of law rules to
determine the controlling substantive law." Patton v.
Cox, 276 F.3d 493, 495 (9th Cir. 2002).  Thus,
California choice of law rules govern the question of
whether the contractual choice-of-law clause is valid.
See Sarlot-Kantarjian v. First Pennsylvania Mortg.
Trust, 599 F.2d 915, 917 (9th Cir. 1979).  Under
California law, contractual choice of law provisions
will be respected unless the transaction falls into
either of the two following exceptions outlined by the
Restatement (Second), Conflict of Laws, section 187:
(1) the chosen state has no substantial relationship to
the parties or the transaction, or (2) application of
the law of the chosen state would be contrary to a
fundamental policy of the state.  See id.; Restatement
2d, Conflict of Laws, § 187.

The Schob Agreement provides that "[t]his Agreement
shall . . . be governed and construed under and in
accordance with the laws of Pennsylvania."  FAC Ex. E,
¶ 18.  The Court finds that there is no indication that
either aforementioned exception applies to the present
case.  Accordingly, the Court finds that Pennsylvania
law will govern the present action and, in effect,

Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6).

### b.  *The Schobs' breach of contract claim against Defendant SBS*

The Schobs claim that SBS breached the Schobs' Agreement in nine ways.  <u>See</u> FAC ¶ 265.  In response to all nine of the Schobs' allegations, Defendants generally argue that the conduct above, alleged to have breached the Schob Agreement, is either expressly permitted or is not prohibited by the Schob Agreement. Mot. to Dismiss as to Schobs 6:6-8:23.

"Under Pennsylvania law, a plaintiff making a breach of contract claim must allege three elements: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." <u>CoreState Bank, N.A. v. Cutillo</u>, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

### i.  *The Schobs do not plausibly allege a breach of contract claim against SBS with allegations 1-5, and 8 (FAC ¶ 265(a)-(e), (h)).*

#### 1.  Allegation regarding permitted vendors of Safeguard products.

The Schobs allege that SBS has breached the Schob Agreement by requiring the Schobs to purchase from "SBS's higher priced Approved Vendors - *i.e.*, Deluxe and its Preferred Suppliers," FAC ¶ 103, rather than

allowing the Schobs to continue to "buy from Approved Vendors that distributors have been buying from for decades." Schobs Opp'n 10:3-5; see FAC ¶¶ 98-108. In support of this allegation, the Schobs point to letters from SBS to two USDA members stating that those distributors could no longer purchase from various Approved Vendors that were not Preferred Suppliers. Id. (citing FAC Ex. I-K).

This Court finds that the Schobs' above allegations do not plausibly allege a breach of contract claim. Upon review of the provisions referenced by the Schobs in support of this allegation[4], and the remainder of the Schob Agreement, this Court finds that the language of the Schob Agreement neither authorizes nor prohibits SBS from requiring that SBS Distributors purchase from Deluxe or other Preferred Suppliers.

Under Pennsylvania law, a party's conduct does not constitute a breach a contract unless he violates an express duty stated within the contract. Gallo v. PHH Mortg. Corp., 916 F.Supp.2d 537, 550 (D.N.J. Dec. 31, 2012)(finding that Plaintiff's failure to allege the breach of an express duty set forth in the contract

---

[4]The cited provisions of the Schob Agreement read as follows: "Safeguard may terminate this Agreement...if any of the following should occur: (i) [the distributors] sell or solicit sales of any products, goods or services which Safeguard determines in its discretion to be competitive with Safeguard Systems; (ii) [the distributors] sell or represent a seller of non-competitive products, goods or services without obtaining [SBS'] prior written consent." FAC, Ex. E ¶ 10(B)(i-ii).

warranted the court's granting of Defendant's motion to dismiss)(applying Pennsylvania law). It is the Schobs' burden to make a plausible showing to the Court that Defendants owed the Schobs an express duty regarding from whom they could source Safeguard products, such as a duty to permit the Schobs to select their own suppliers. It is also the Schobs' burden to plausibly allege that Defendants breached that duty. The Schobs have not pointed to any provision of the Schob Agreement that shows Defendants owed such a duty to the Schobs. Without a showing of an affirmative duty on behalf of Defendants, the Schobs cannot plausibly claim Defendants' breached the contract. See generally CoreState Bank,, 723 A.2d at 1058 (Pa. Super. Ct. 1999).

In fact, the Schobs concede in their First Amended Complaint that "SBS Distributors have been placing orders with the Approved Vendors of Safeguard Systems for 25 years – and under the BODP Program they have been making direct purchases from those same vendors for almost 20 years. Safeguard always has *approved and accepted* these BODP products as supply-side substitutes for the Deluxe manufactured products." FAC ¶ 98 (emphasis added). This history of oversight indicates that SBS has historically overseen which vendors the distributors purchase from.

The Schobs do not identify a provision in the Schob Agreement that shows Defendants had any duty to allow

the Schobs to purchase from the Approved Vendors of
their choice.  Accordingly, this Court finds that the
Schobs' first allegation in support of its breach of
contract claim (FAC ¶ 265(a)) does not sufficiently
allege a duty that was breached to support a plausible
breach of contract claim.

> 2. *Allegations regarding rebates (FAC ¶ 265(b), (c)).*

The Schobs next argue that SBS breached the Schob
Agreement by "(b) Requiring Preferred Suppliers to pay
rebates or "kickbacks" at the Schobs' expense" and "(c)
Imposing 2% Net 30 payment terms on non-preferred
Approved Vendors at the Schobs' expense," FAC ¶ 265(b),
(c), "which is in effect another 2% rebate" at the
Schobs' expense.  Schobs Opp'n 10:11-12:4.  Generally,
the Schobs allege that Defendants have implemented the
above mentioned policies, which result in higher
product prices, ultimately harm distributors' sales,
and result in a breach of the Schob Agreement.  Id. at
10:13-21.  The Schobs contend that "Defendants are
arguing that SBS has a right to charge a rebate of
infinite amount to any vendor it so chooses and thereby
make it pragmatically impossible for a distributor to
ever buy from that vendor again."  Id. at 10:22-24.

Upon review of the Schob Agreement, this Court
finds that the language of the Agreement, cited by
Defendants to show that the Agreement "unequivocally"

permits such conduct, does not provide as such.[5]
Rather, the referenced provisions provide that
distributors must solicit orders of Safeguard Systems
in accordance with the price schedules published by
Safeguard, and that distributors' commission rates may
change at SBS' discretion, within certain limitations.
This language does not support a finding that Defendant
is explicitly authorized by the Agreement to charge
rebates of Approved Vendors or Preferred Suppliers.
However, the Court finds that nothing in the Schob
Agreement *prohibits* SBS from charging such rebates.
Accordingly, with these allegations, the Schobs have
not plausibly alleged a breach of an express duty to
support a viable breach of contract claim under
Pennsylvania law.

> 3. *Allegations regarding increased*
> *BODP fees (FAC ¶265(d)).*

As to the Schobs' allegations that SBS is
"[c]harging BODP fees in excess of actual

---

[5]In support of this contention, Defendants reference section one of the Schob Agreement which states that the Schobs are to "solicit orders of Safeguard Systems...in accordance with the price schedules published by Safeguard from time to time, and in accordance with other terms and conditions...as Safeguard may specify from time to time." FAC, Ex. E, ¶ 1. Defendants next reference section six which states that "commission rates may be changed at [SBS'} sole discretion due to a change in economic or competitive conditions", however with advanced warning and limited by the fact that the commission change must be effective as to all distributors. Id. at § 6(B). Additionally, the Schobs "shall comply with national or divisional administrative and commission policies not in conflict" with th[e] Agreement." Id. at ¶ 6(E).

administrative costs," (FAC ¶ 265(d)), the Schobs allege that SBS has breached the Schob Agreement by charging fees on products sourced from Approved Vendors far in excess of actual administrative costs." Schobs' Opp'n 11:17-19.  The Schobs allege that prior to Deluxe's acquisition of SBS, SBS had charged a BODP fee commensurate with its Sourced Fees.  FAC ¶ 91. Following the acquisition, the Schobs argue that Deluxe forced SBS to implement a percentage schedule for the BODP Program that tripled the fees for products sourced from Approved Vendors.  Id.  In doing so, the Schobs allege that "Deluxe is able to discourage the distributors from using these Approved Vendors."  Id. The Schobs allege that the excessive BODP fees are "a commercially unreasonable attempt to penalize distributors from using certain Approved Vendors," and thus this conduct constitutes a breach of the Schob Agreement.  Schobs Opp'n 11:17-12:4.

Again, the Schobs fail to point to a provision in the Schob Agreement that prohibits SBS from raising the BODP fees, or a provision that shows a duty on behalf of SBS to maintain BODP fees that correlate with administrative costs.  The Schobs simply argue that the new fees are "commercially unreasonable," "unlawful and violate the SBS Distributor Agreements."  FAC ¶¶ 92, 94.  In fact, the provision of the BODP Addendum cited by the Schobs to allege a breach of the Schob Agreement states, "Safeguard shall maintain a schedule of

handling and processing charges for BODP orders, which may from time to time be changed by Safeguard."  Id. Ex. H, "Commission Rate and Terms of Payment."  The Addendum further states that the distributors' commission will be the amount billed to the customer "less the applicable processing charge as determined by the schedule then in effect."  Id.  This Court finds that the Schobs have again failed to plausibly allege that Defendants breached the Schob Agreement in increasing the BODP fees.

4.  *Allegation regarding increased shipping and handling costs (FAC ¶ 265(e)).*

As to the Schobs' allegation that SBS is "[a]rbitrarily increasing shipping and handling costs for its own profits," FAC ¶ 265(e), this Court finds that the Schobs again fail to plausibly allege that this conduct constitutes a breach of an express duty in the Schob Agreement.

The Schobs allege that Deluxe, thus consequently SBS, has doubled the shipping and handling costs of Deluxe products when invoicing distributors' customers. Id. at ¶ 125.  The Schobs allege that the new costs are "double the actual shipping costs under UPS or comparable shipping companies" and that Deluxe is keeping the difference as profits.  Id.  The Schobs argue that the fees are "not commercially reasonable and are unlawful," and thus "violate the SBS

Distributor Agreements." Id. at ¶ 127. In the Schobs'
Opposition, the Schobs provide no further support or
explanation as to why Defendants' increase in the
shipping and handling costs of Safeguard products
amounts to a breach of the Schob Agreement, other than
that it could be "characterized as a deceptive scheme
under federal franchise regulations." Schobs' Opp'n
11:6. The Schobs do not point to any language in the
Schob Agreement to support their contention that SBS
breached the Agreement through the above conduct.

Again, as discussed above, a party cannot plausibly
allege a breach a contract under Pennsylvania law
unless he shows that his opponent violated an express
duty stated within the contract. Gallo v. PHH Mortg.
Corp., 916 F.Supp.2d 537, 550 (D.N.J. Dec. 31, 2012).
Similar to the previous breach of contract allegations,
this Court finds that the Schobs have not plausibly
alleged a viable breach of contract claim arising from
the Schob Agreement.

5.   *Allegation regarding*
     *correspondence relating to*
     *Protected Customers (FAC ¶*
     *265(h)).*

The Schobs next allege that Defendants breached the
Schob Agreement by failing to provide the Schobs with
copies of all inquiries and other correspondence
related to its Protected Customers. FAC ¶ 265 (h).
Defendants contend that SBS is only required to provide

the Schobs with inquiries and correspondence *from* Protected Customers, rather than *relating to* Protected Customers.  Mot. to Dismiss 8:11-14.  Defendants thus argue that the documents that the Schobs allege SBS failed to provide them - information accumulated by SBS as to "Cross-Over Customers" (Protected Customers who have been solicited by other distributors in violation of the Schobs' Customer Protection rights) - are not covered by paragraph 7(B) of the Schob Agreement.  <u>Id.</u> at 8:15-20.  In their Opposition, Plaintiffs provide no further argument as to how SBS breached its alleged obligation to provide them with correspondence and inquiries received by Safeguard from the Protected Customers.  Schobs Opp'n 13:14-22.

Upon review of the Schob Agreement[6], specifically paragraph 7(B), and the Schobs' discussion of the documents they seek in their First Amended Complaint, FAC ¶¶ 176-191, this Court finds that Plaintiff has failed to plausibly allege that SBS breached the Schob Agreement as a result of the above alleged conduct. The documents the Schobs seek are reports created by Deluxe and SBS as part of their due diligence before acquiring new distributors.  Therefore, it is clear

---

[6]<u>See</u> FAC, Ex. E, ¶ 7(B)(The Schob Agreement reads that SBS will "[f]orward to [the Schobs] with reasonable promptness copies of all inquiries and other correspondence relating to Safeguard Systems received by Safeguard *from* [Protected Customers], together with copies of Safeguard's reply to such inquiries or correspondence.") (emphasis added).

that these documents are not required to be disclosed to the Schobs by the relevant provision, which governs correspondence received by Safeguard from Protected Customers.  See FAC, Ex. E, ¶ 7(B).  As such, the Schobs have not plausibly alleged that SBS' failure to provide the Schobs with copies of these documents is a breach of the Schob Agreement.

> ii. *The Schobs plausibly allege a breach of contract claim against SBS with allegations six, seven, and nine (FAC ¶ 265(f), (g), (i)).*

The Schobs' remaining allegations in support of their breach of contract claim against SBS involve alleged breaches of the Schobs' "Customer Protection rights."[7]  The Schobs allege that SBS violated these rights, and thus the Schob Agreement, in the following three ways: (1) SBS "[failed] to take action to prohibit other SBS Distributors from selling to the Schobs' Protected Customers pursuant to the Customer Protection rights identified in the Schob Distributor Agreement," (2) "[failed] to pay the Schobs all commissions generated on sales to its customers pursuant to the Customer Protection rights," and (3) "[failed] to notify the Schobs, with reasonable

---

[7] Throughout their First Amended Complaint and Opposition, the Schobs have consistently referred to section four of the Schob Agreement entitled "Account Protection Rights" as "Customer Protection rights."  The Court has referred to this provision accordingly for convenience.

promptness, of any event that may reasonably be expected to have a material adverse effect upon the sale of Safeguard Systems to its protected customers." FAC ¶ 265 (f), (g), (i).

Upon review of the Schob Agreement[8] and Plaintiffs' First Amended Complaint, it is clear that the Schobs put forth sufficient factual support to show that Deluxe and SBS were aware of potential "Customer Protection violations," yet they failed to prohibit these violations or notify the necessary distributors. FAC at ¶¶ 176-191. Additionally, the Schobs put forth sufficient factual support to plausibly allege that, in breach of the Schob Agreement, SBS has failed to pay the Schobs all commissions generated on sales to their Protected Customers. Id. at ¶¶ 208-210. The Schobs allege that "SBS was aware of the company owned distributors who were bought and subsequently solicited Schobs' protected customers. This had a materially adverse effect upon the Schobs sales of products to these customers. Consequently, this is a breach of the

_____

[8]Section seven of the Schob Agreement provides that SBS will "[u]se reasonable efforts (i) to investigate allegations that other Safeguard distributors may be improperly soliciting Safeguard Systems orders in the Territory or to the customers identified in Attachment B and (ii) to pay the applicable commissions on such sales to the proper distributor." FAC Ex. E ¶ 7(G). The Agreement further provides that SBS will "[n]otify [the Schobs] with reasonable promptness upon becoming aware of any liability claim by any of the [Protected Customers] relating to Safeguard Systems or of any other event that may reasonably be expected to have a material adverse effect upon the sale of Safeguard Systems to such customers." FAC Ex. E, ¶ 7(C).

Schob Distributor Agreement." Schobs' Opp'n 13:27-14:3. As a result, the Schobs allege that they have "incurred damages in an undetermined amount." <u>Id.</u> at ¶¶ 265, 266.

This Court finds from the plain language of the Agreement, referenced above, that the Schobs plausibly alleged conduct in violation of its terms, and thereby plausibly alleged a breach of contract claim based on Defendants' failures to act in accordance with the Agreement. Specifically, allegations six, seven, and nine of the First Amended Complaint (FAC ¶¶ 265(f), (g), (i)) contain sufficient factual support to plausibly allege a breach of contract claim against Defendant SBS. Accordingly, this Court **DENIES** Defendants' Motion to Dismiss the Schobs' breach of contract claim against SBS pursuant to F.R.C.P. 12(b)(6).

c.   *The Schobs' Breach of Covenant of Good Faith and Fair Dealing Claim against SBS.*

The Schobs contend that Defendants breached an implied covenant of good faith and fair dealing in the Schob Agreement by "depriving the Schobs of the benefits of the [Agreement}." FAC ¶ 270.

First, the Schobs allege that "SBS breached the implied covenant of good faith and fair dealing by ...encourag[ing] other Safeguard distributors to solicit and sell to the Schobs' Protected Customers." <u>Id.</u> at ¶ 270. The Schobs allege that Greg Schob has

31

made many requests to SBS to take action and prevent its company owned distributors and other Safeguard owned distributors from soliciting sales to Schobs' Protected Customers.  Id. at ¶ 271.  The Schobs contend that SBS has refused these requests and continues to encourage other distributors to sell to the Schobs' Protected Customers in violation of the Customer Protection rights "implicit in the Schob Distributor Agreement."  Id.  The Schobs contend that as a result, the Schobs have been damaged "in an amount to be proven at trial, but in no event less than the lost commissions, the lost business profits and the business devaluation suffered by the Schobs."  Id. at ¶ 274. This conduct, allegedly in violation of an implied covenant of good faith and fair dealing, is the same conduct alleged in support of the Schobs' breach of contract claim raised above.  See id. at ¶ 265(f); see also id. at ¶¶ 270-271.

Second, the Schobs allege that SBS breached an implied covenant of good faith and fair dealing by "unreasonably [withholding] its consent" to the Schobs' acquisitions of various distributorships, thereby depriving the Schobs of the benefits of the Schob Agreement.  Id. at ¶ 273.  The Schobs allege that "[a]s a direct, proximate, and foreseeable result of SBS's breach of its duty of good faith and fair dealing, the Schobs have been damaged in an amount to be proven at trial, but in no event less than the lost commissions,

1  the lost business profits and the business devaluation

2  suffered by the Schobs." Id. at ¶ 274.

3      Defendants argue that Pennsylvania law does not

4  even "recognize a claim for breach of the implied

5  covenant of good faith and fair dealing as an

6  independent cause of action separate from the breach of

7  contract claim, since the actions forming the basis of

8  the contract claim are essentially the same as the

9  actions forming the basis of the bad faith claim."

10  Mot. to Dismiss 8:26-9:4. (citing McHale v. NuEnergy

11  Group, No. 01-4111, 2002 WL 321797, at *8 (E.D. Pa.

12  Feb. 27, 2002)).  Defendants seem to misinterpret this

13  language, using it to imply that a breach of an implied

14  covenant of good faith and fair dealing claim does not

15  exist as a separate claim for relief under Pennsylvania

16  law.  Rather, courts have interpreted the case law to

17  mean that, pursuant to Pennsylvania law, the Schobs may

18  not bring such a claim without bringing a valid breach

19  of contract claim.[9]  Accordingly, the Schobs properly

20

21      [9]The Third Circuit has held that "under Pennsylvania law,
the implied covenant of good faith does not allow for a cause of
22  action separate and distinct from a breach of contract claim."
Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d. Cir. 2013).  The
23  Third Circuit reasoned that "a 'claim for breach of the implied
covenant of good faith and fair dealing is subsumed in a breach
24  of contract claim.'"  Id. (citing LSI Title Agency, Inc. v.
Evaluation Servs., Inc., 951 A.2d 384, 392 (Pa. Super. Ct. 2008).
25  Thus, a claim arising from a breach of the covenant of good faith
must be prosecuted as a breach of contract claim, as the covenant
26  does nothing more than imply certain obligations into the
contract itself.'"  Id. (citing JHE, Inc. v. Se. Pa. Transp.
27  Auth., No. 1790, 2002 WL 1018941, at *5 (Pa. Com. Pl. May 17,
28  2002) (emphasis in original)).

brought a breach of the implied covenant of good faith and fair dealing claim here.  See Gallo, 916 F.Supp.2d at 551.

"The covenant of good faith and fair dealing is implied in every contract under Pennsylvania law." Id. "[I]n order to survive...[a] motion to dismiss the breach of contract claim founded upon a breach of the implied covenant of good faith and fair dealing, Plaintiff[s] need only allege facts sufficient to support a claim that the implied covenant was breached, as opposed any other specific contractual duty." Gallo, 916 F.Supp.2d at 551.  Moreover, both state and federal courts in Pennsylvania have recognized that "'[t]he covenant of good faith may also be breached when a party exercises discretion authorized in a contract in an unreasonable way.'"  Montanez v. HSBC Mortg. Corp.(USA), 876 F.Supp.2d 504, 513 (E.D.Pa. July 17, 2012) (citing Phila. Plaza-Phase II v. Bank of Am. Nat'l Trust & Savings Assoc., No. 3745 APRIL TERM 2002, 2002 WL 1472337, at *6 (Pa. Ct. Com. Pl. Phila. Cnty. June 21, 2009)).

As to the Schobs' first allegation, this Court finds that the Schobs' have plausibly alleged a breach of the implied covenant of good faith and fair dealing claim.  As discussed above, in support of their breach of contract claim, the Schobs pointed to section seven of the Schob Agreement to establish that SBS owed the Schobs a duty to prevent other distributors from

soliciting sales to their Protected Customers. FAC ¶ 265(f). Further, the Schobs plausibly alleged damages resulting from Defendants' breach of their alleged duty. Id. at ¶ 266. The Schobs plausibly alleged a breach of contract claim, based on these same allegations, and thus they have properly brought an implied covenant of good faith and fair dealing claim here. Further, upon review of section seven of the Schob Agreement, the Schobs have shown this Court that, whether or not the Schob Agreement was expressly breached, it is plausible based on the facts presented that Defendants "exercise[d] discretion authorized in [the] contract in an unreasonable way." Montanez, 876 F.Supp.2d at 513. Thus, this Court finds that the Schobs have plausibly alleged a breach of the implied covenant of good faith and fair dealing.

As to the Schobs' second allegation, that SBS breached an implied covenant of good faith and fair dealing by "unreasonably [withholding] its consent" to the Schobs' acquisition of various distributorships, FAC ¶ 273, the Schobs fail to plausibly allege their claim. As discussed above, under Pennsylvania law, the Schobs cannot maintain an independent cause of action for a breach of the covenant of good faith and fair dealing if they have not subsumed the allegation in a contract claim. The Schobs did not allege this conduct in their breach of contract claim. See FAC ¶ 265. Accordingly, the Schobs failed to plausibly allege a

breach of the covenant of good faith and fair dealing as to their second allegation.

In finding that the Schobs first allegation plausibly supports a breach of the implied covenant of good faith and fair dealing claim, this Court **DENIES** Defendants' Motion to Dismiss this claim pursuant to F.R.C.P. 12(b)(6).

> d. *The Schobs' claims for tortious interference with contractual relations and intentional interference with prospective economic advantage.*

Under Pennsylvania law, in order to raise a viable claim for tortious interference with contractual relations, a plaintiff must allege the following elements: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." <u>Skiff re Business, Inc. v. Buckingham Ridgeview, LP</u>, 991 A.2d 956, 966 (Pa. Super. 2010).

Although the Schobs sixth and seventh claims allege "intentional interference with prospective economic advantage," the correct classification of these claims

under Pennsylvania law is "tortious interference with existing or prospective contractual relations." See ClubCom, Inc. v. Captive Media, Inc., 2009 WL 249446, at *7 (W.D. Pa. Jan. 31, 2009)("Pennsylvania does not recognize a tort for 'intentional interference with prospective economic advantage,' but does apply its 'intentional interference with contractual relations' tort to prospective contracts."); see also Binary Semantics Ltd. v. Minitab, Inc., 2008 WL 1981591, at *2 (M.D. Pa. May 1, 2008)(the court held that "plaintiffs' claim for intentional interference with prospective economic advantage is best described under Pennsylvania law as one for tortious interference with contractual relations."). Accordingly, there is no distinct claim for interference with prospective economic advantage under Pennsylvania law. Rather, the claim is construed as one for tortious interference with contractual relations. Blackwell v. Eskin, 916 A.2d 1123, 1126 (Pa. Super. 2007).

> i. *Tortious interference with contractual relations claims against SBS and Deluxe (claims five and seven).*

The Schobs base both claims five and seven against SBS and Deluxe, claims for tortious interference with contractual relations and intentional interference with prospective economic advantage, on the same alleged conduct. Further, under Pennsylvania law, a claim for intentional interference with prospective economic

37

advantage will be construed as a claim for tortious interference with contractual relations.  As such, this Court will address claims five and seven as one claim for tortious interference with contractual relations.

The Schobs allege that Deluxe and SBS interfered with acquisition agreements between the Schobs and various distributorships, the Schob Acquisition Agreements, as well as their economic relationships with these distributorships, by unreasonably withholding their consent to the transactions.  FAC ¶¶ 289, 293, 309, 311.  The Schobs allege that Deluxe and SBS interfered by requiring them to sign the aforementioned General Release of all claims against Deluxe and its subsidiaries in order to complete the transactions, and refusing to consent to the Schob Acquisition Agreements until they did.  Id. at ¶ 229-245.  The Schobs contend that "[t]his refusal by SBS and Deluxe was intended and designed solely and wrongfully to induce a breach of or disruptions in the Schob Acquisition Agreements."  Id. at ¶ 295.  The Schobs further contend that SBS and Deluxe's "intentional, wrongful withholding of consent to the transaction[s] [have] resulted in the termination of the Schob Acquisition Agreements," and "[a]s a direct, proximate, and foreseeable result, the Schobs have been damaged in an amount to be proven at trial, but in no event less than they anticipated gains they would have made through the operation of [these

distributorships]." Id. at ¶¶ 296, 297.

This Court finds that the Schobs do not plausibly allege the following two elements of a tortious interference with contractual relations claim as to Defendant Deluxe: "(2) purposeful action on the part of [Deluxe], specifically intended to harm [an] existing relation, or to prevent a prospective relation from occurring," and "(3) the absence of privilege or justification on the part of the defendant," as required for a plausible claim under Pennsylvania law. See Skiff re Business, 991 A.2d at 966 (Pa. Super. 2010).

Upon review of the General Release and the Schob Agreement, it is clear that Deluxe is not a party to either agreement. See FAC, Exs. MM, E.  Rather, SBS and the Schobs are the only two parties to both agreements. Id.  Without further evidence or factual allegations, the Schobs have not shown this Court that Deluxe had any involvement in requiring that the Schobs sign the General Release, or how Deluxe may have prevented the Schob Acquisition Agreements from being approved.  The Schobs merely state that Deluxe "forc[ed] SBS to require that its distributors sign a general release before selling or buying another distributor," id. at ¶ 220, without providing any factual support for this contention.  In order to survive Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6), the Schobs must put forth sufficient

facts to plausibly allege each element of the tortious interference with contractual relations claim, as to each Defendant, SBS and Deluxe. <u>Skiff re Business</u>, 991 A.2d at 966 (Pa. Super. 2010).  Here, the Schobs have failed to plausibly allege that Deluxe committed the conduct at issue, or that it did so with the intention of interfering with the Schobs' existing contractual relationships.

Further, this Court finds that the Schobs did not plausibly allege all of the elements of a tortious interference with contractual relations claim as to SBS.  Specifically, the Schobs failed to plausibly allege element two, that SBS' actions were "specifically intended to harm" the success or viability of the Schob Acquisition Agreements or the existing relationship between SBS and the Schobs.  As discussed above, to survive Defendants' Motion to Dismiss on the grounds of failure to state a claim under F.R.C.P. 12(b)(6), the Schobs must plausibly allege all elements of the claim. <u>See Skiff re Business, Inc.</u>, 991 A.2d at 966 (Pa. Super. 2010).  As to the intention element of this tortious interference claim, the Schobs merely state in a conclusory fashion that "[t]his refusal ...was intended and designed solely and wrongfully to induce a breach of or disruption in the Schob Acquisition Agreements."  FAC ¶ 295.  The Schobs did not allege any facts that support their contention that SBS required the execution of the

General Release, and withheld their approval of the Schob Acquisition Agreements until its execution, for the specific purpose of causing harm to the Schobs by preventing these transactions from going through. Accordingly, the Schobs did not plausibly allege this claim against SBS and thus the claim is dismissed pursuant to F.R.C.P. 12(b)(6).

This Court **GRANTS with prejudice** Defendants' Motion to Dismiss the Schobs' claims five and seven, construed as one tortious interference with contractual relations claim, against Deluxe and SBS.  The Court declines to give the Schobs further leave to amend this claim, as Plaintiffs have previously been granted leave to amend their original Complaint and have since put forth a First Amended Complaint with extensive factual background, allegations, and accompanying exhibits. Upon review of the First Amended Complaint, it is not apparent to this Court that the Schobs would be able to remedy the deficiencies in their First Amended Complaint to plausibly allege a tortious interference with contractual relations claim against Defendants Deluxe and SBS.  As such, to avoid undue delay and prejudice to the Defendants, this Court declines to give the Schobs further leave to amend this claim.  <u>See Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).

              ii. *Tortious interference with contractual relations claims against Deluxe and*

*SAI (claim four) and all Defendants (claim six).*

Claim four, brought against Deluxe and SAI, and claim six, brought against all Defendants, are based on the same alleged conduct.  Again, as Pennsylvania construes a claim for intentional interference with prospective economic advantage as an intentional interference with contractual relations claim, this Court will address the Schobs' claims four and six as one intentional interference with contractual relations claim against all Defendants.

The Schobs allege that each of the Defendants were aware of the Schobs' Distributor Agreement, their relationship with their Protected Customers, and their correlating Customer Protection Rights.  FAC ¶¶ 278, 301.  The Schobs allege that Defendants nonetheless "took actions adverse to Schobs' contractual relationship with SBS," id. at ¶ 278, and "deliberately, wrongfully and without privilege interfered with these economic relationships."  Id. at ¶ 302.  The Schobs list these alleged actions in support of their claim against Defendants for tortious interference of contractual relations.  See id. at ¶¶ 279, 280, 302.  Many of these allegations closely mirror the breach of contract claim allegations made

42

against SBS.[10]

As to all Defendants, this Court dismisses the Schobs' claims four and six, for failure to plausibly allege a tortious interference with contractual relations claim. This Court finds that the Schobs failed to allege any facts to support its contention that Defendants *intentionally* interfered with the Schob Distributor Agreement, as required by element two of a tortious interference with contractual relations claim under Pennsylvania law.[11] See Skiff re Business, Inc., 991 A.2d at 966 (Pa. Super. 2010). Rather, the Schobs simply restate various allegations used in support of their breach of contract claim against SBS, and argue in a conclusory fashion that "Deluxe and SAI's actions were intended and designed solely and wrongfully to

_____

[10]The allegations include the following: that "Deluxe and SAI solicited and made sales to Schobs' Protected Customers," and that "Deluxe and SAI knew or should have known that they were materially damaging Schob's contractual relationship with SBS because of the loss of customers that had resulted from Deluxe and SAI's conduct." Id. at ¶ 283. Finally, the Schobs contend that "[a]s a direct, proximate, and foreseeable result, the Schobs have been damaged in an amount to be proven at trial, but in no event less than its lost commission." Id. at ¶ 286.

[11]As discussed above, in order to survive Defendants' Motion to Dismiss as to this claim, the Schobs must plausibly allege "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." Skiff re Business, Inc. v. Buckingham Ridgeview, LP, 991 A.2d 956, 966 (Pa. Super. 2010).

induce a breach of or disruption in the Schob Acquisition Agreements," FAC ¶ 284, and that "Defendants conduct was malicious, fraudulent and oppressive and done with a conscious disregard for the Schobs' rights." Id. at ¶ 307.  The Schobs' allegations are mere recitations of the two claims' elements and thus they fail to satisfy the plausibility standard under F.R.C.P. 12(b)(6).

Accordingly, this Court **GRANTS with prejudice** Defendants' Motion to Dismiss the Schobs' claims four and six, construed as one tortious interference with contractual relations claim, as to all Defendants. Again, this Court declines to grant the Schobs further leave to amend this claim.  Similar to claims five and seven, upon review of the extensive allegations and information already before this Court, it is not apparent to the Court that the Schobs would be able to remedy the deficiencies in their First Amended Complaint to plausibly allege this claim.  Therefore, to avoid undue delay and prejudice to the Defendants, this Court declines to give the Schobs further leave to amend this claim.  See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

e.  *Intentional misrepresentation and negligent misrepresentation claims against SBS and SAI.*

Defendants argue that the Schobs' claims for intentional and negligent misrepresentation are barred

44

by the applicable statute of limitations.  Mot. 16:24-18:14.  Defendants argue that Plaintiffs' action must have been commenced within two years, and that this time has since expired.  Id. at 18:2-14.  Title 42 of the Pennsylvania Consolidated Statutes Section 5524 states that an "action or proceeding to recover damages for injury to person or property which is found on negligent, intentional, or otherwise tortious conduct," must be commenced within two years.  42 Pa. Cons. Stat. Ann. § 5524.  "Equitable tolling is permitted under the discover rule only when, despite the exercise of due diligence, the injured party is unable to know of the injury or its cause."  O'Kelly v. Dawson, 62 A.3d 414, 420 (Pa. Super. 2013).[12]

This Court finds that the Schobs put forth sufficient evidence to plausibly allege that reasonable minds could not differ as to whether the Schobs knew or should have known of the alleged injury through the exercise of due diligence.  In so finding, this Court determines that the Schobs have plausibly alleged that equitable tolling applies because the Schobs showed sufficient evidence that they exercised due diligence

---

[12]Whether to apply equitable tolling "'ordinarily' requires the jury to make a factual determination as to whether the plaintiff acted with reasonable diligence, unless the facts are so clear that reasonable minds cannot disagree on the issue." Id. (citing Fine v. Checcio, 870 A.2d 850, 858-59 (Pa. 2005)). Where reasonable minds would not differ as to whether a party knew or should have known of the injury through the exercise of reasonable diligence, the court makes the determination. Id.

in communicating with SAI, SBS, and Sutton, and in so communicating, could not have known whether or not Defendants SBS and SAI had ever intended to produce the software tool. See FAC, Exs. P-T.

In their First Amended Complaint, The Schobs put forth ample evidence that the Schobs continually reached out to Defendants SBS and SAI to inquire as to the status of the software tool.[13]  Upon review of Plaintiffs' First Amended Complaint and the attached exhibits, which include emails from the Schobs to Santos, this Court finds that the Schobs have plausibly alleged that from the time of October 2010 to February 2015, the Schobs were not aware of the alleged negligent or intentional tortious conduct, specifically that Defendants SBS and SAI may have never intended to produce the software tool at issue for the Schobs.

Further, this Court finds that the Schobs have plausibly alleged all of the requisite elements for

---

[13]See FAC ¶¶ 166, 171-173; see FAC, Exs. P-T.  In response to their inquiries, SBS and SAI employees frequently reassured the Schobs that the software "was forthcoming." Id. at ¶ 171. "However, as time passed, SBS and SAI continued to fail to produce the software." Id.  The last communication the Schobs had with SBS regarding the status of the software tool was in January, 2015.  Id. at ¶ 172.  On December 16, 2014, Greg Schob sent an email to SBS Vice President Kellye Santos ("Santos"), inquiring as to when the software would be delivered.  Id.; FAC Ex. T.  The Schobs allege that Santos replied on January 9, 2015, stating that the tool would be produced the following month.  Id.  When February, 2015 passed and the tool was still not produced to the Schobs, the Schobs state that it was then clear that SBS and SAI's representation that they would produce the tool was false.  Id. at ¶ 172.

their intentional misrepresentation and negligent misrepresentation claims.[14]   In their First Amended Complaint, the Schobs allege that SBS and SAI, "through their agent Sutton", made a representation as to the production of a software tool that they never intended to procure.   FAC ¶¶ 316, 317.   The Schobs further allege that when they made the representation they did so with reckless disregard for its truth, or alternatively, with "no reasonable grounds for believing the representation was true."   Id. at ¶¶ 318, 326.   The Schobs allege that SBS and SAI intended that the Schobs would rely on this representation, id., and the Schobs did in fact rely on the representation, which caused the Schobs harm.   Id. at ¶¶ 321, 329.

As to Defendants' Motion to Dismiss the Schobs' claims due to the expiration of the applicable statute of limitation, this Court finds that the Schobs have

---

[14]To plausibly allege a claim for intentional misrepresentation, a party must put forth sufficient facts to show: (1) a representation, (2) which is material to the transaction, (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false, (4) with the intent of misleading another into relying on it, (5) justifiable reliance on the misrepresentation, and (6) the resulting injury was proximately caused by the reliance.   Polhill v. FedEx Ground Package Sys., 604 F. App'x 104, 108 (3d Cir. 2015)(citing Gibbs v. Ernst, 647 A.2d 882, 889 (1994)).   Similarly, to allege a claim for negligent misrepresentation, a party must show: (1) a misrepresentation of material fact, (2) made under circumstances in which the misrepresenter ought to have known its falsity, (3) with an intent to induce another to act on it, and (4) which results in injury to a party acting in justifiable reliance on the misrepresentation.   Bortz v. Noon, 729 A.2d 555 (Pa. Super. Ct. 1999).

plausibly alleged that the equitable tolling rule applies, and have plausibly alleged claims for negligent and intentional misrepresentation.  As such, this Court **DENIES** Defendants' Motion to Dismiss the Schobs claims of intentional and negligent misrepresentation.

f.   *Conversion claim against all Defendants (claim ten).*

In their tenth claim against Defendants, the Schobs allege that "Defendants intentionally and substantially interfered with the Schobs' possessory interest in the commissions on all sales to its [P]rotected [C]ustomers by taking possession of these commissions and preventing the Schobs from having access to the commissions."  FAC ¶ 333.  The Schobs further allege that "Defendants continue to service and sell to Schobs' Protected Customers and receive and retain the commissions that are [the] Schobs' rightful property." Id. at ¶ 334.

"Under Pennsylvania law, conversion is an act of willful interference with the dominion and control over a chattel done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." Tegg Corp v. Beckstrom Elec. Co., 650 F.Supp.2d 413, 432 (W.D. Pa. 2008).  However, under Pennsylvania law, a conversion claim cannot stand when it essentially duplicates an action for breach of an underlying contract.  "A party cannot prevail on its

action of conversion when the pleadings reveal merely a damage claim for breach of contract." <u>Brown & Brown, Inc. v. Cola</u>, 745 F.Supp.2d 588, 622 (E.D. Pa. Oct. 4, 2010)(citing <u>Neyer, Tiseo & Hindo, Ltd. v. Russell</u>, No. CIV.A.92-2983, 1993 WL 334951, at *4 (E.D. Pa. Mar. 2, 1993)).

This Court finds that the Schobs have not plausibly alleged a conversion claim.  Based on the Schobs' allegations, FAC ¶¶ 330-335, the Schobs' conversion claim appears simply to be a restated breach of contract claim.  The Schobs merely recant broadly that "Defendants intentionally and substantially interfered with the Schobs' possessory interest in the commissions on all sales to its [P]rotected [C]ustomers by taking possession of these commissions and preventing the Schobs from having access to the commissions." <u>Id.</u> at ¶ 333.  Moreover, the Schobs provide no factual support that Defendants willfully interfered with the Schobs' possession of the commissions without legal justification.  Rather, the Schobs' allegations are unsupported and seem to restate the language of their breach of contract claim.  This Court **GRANTS with prejudice** Defendants' Motion to Dismiss as to the Schobs' conversion claim.  Again, in their First Amended Complaint, Plaintiffs have already provided this Court with extensive factual background and allegations, supported by comprehensive exhibits in support of their claims.  Upon review of the

information already before this Court, it appears that the Schobs would not be able to remedy the deficiencies in their conversion claim against Defendants.  In order to avoid undue delay and prejudice to Defendants, this Court declines to grant the Schobs further leave to amend their First Amended Complaint to plausibly state their conversion claim.  See Eminence Capital, LLC, 316 F.3d at 1052.

g.  *Accounting (claim eleven).*

The Schobs seek an order that Defendants pay the Schobs all amounts due and owing to the Schobs, plus interest thereon, and attorneys' fees and costs.  FAC ¶ 339.  In so requesting, the Schobs seek an accounting of Defendants' operations because, as the Schobs' allege, the Defendants are indebted to the Schobs as a result of all of their previous claims.  Id. at ¶ 337. The Schobs state that the amount of Defendants' indebtedness to the Schobs is "unknown and cannot be ascertained without an accounting of Defendants' operations."  Id. at ¶¶ 337-339.  Plaintiffs' FAC does not specify whether they seek an equitable accounting or an accounting at law.

In requesting an accounting, a complaint "seeks to turn over to the party wrongfully deprived of possession all benefits accruing to defendant by reason of its wrongful possession."  Boyd & Mahoney v.. Chevron U.S.A., 614 A.2d 1191, 1197 (1992). Pennsylvania law does not permit an *equitable*

accounting "where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law." Poeta v. Jaffe, Case No. 1357 NOV. TERM 2000, 2001 WL 1113012 at *4 (Pa. Ct. C.P. 2001) (citing Rock v. Pyle, 720 A.2d 137, 142 (Pa. Super. Ct. 1998)).  If Plaintiffs have an adequate remedy available at law, they are precluded from pursuing an accounting in equity and their claim for such accounting must be dismissed.  See id.; Cf. Allegheny Plastics, Inc. v. Stuyvesant Ins. Co., 200 A.2d 775, 775 (1964)("the substance of plaintiff's complaint is an alleged breach of contract and the ultimate relief is money damages, therefore, we are of [the] opinion that there is an adequate remedy at law.").

However, where a party is not entitled to an equitable accounting because he has an adequate remedy at law, such as a breach of contract, Pennsylvania law does permit the party to request a *legal* accounting.[15]

_____

[15]To establish a right to an accounting at law, the plaintiff must show: (1) there was a valid contract, express or implied, between the parties whereby the defendant (a) received monies as agent, trustee or in any other capacity whereby the relationship created by the contract imposed a legal obligation upon the defendant to account to the plaintiff for monies received by the defendant, or (b) if the relationship created by the contract between the plaintiff and defendant created a legal duty upon the defendant to account and the defendant failed to account and the plaintiff is unable, by reason of the defendant's failure to account, to state the exact amount due him, and (2) that the defendant breached or was in dereliction of his duty

McGough v. Broadwing Communications, Inc., 177 F.Supp.2d 289, 300 (D.N.J. Dec. 21, 2001).

In the present action, as found above, the Schobs have plausibly alleged both a breach of contract claim and tortious conduct, specifically negligent and intentional misrepresentation.  In considering equitable accounting, the Schobs will have an adequate remedy at law as to their breach of contract claim against SBS, and therefore an equitable accounting arising from that alleged conduct is inappropriate. However, "[a]n actionable claim for an accounting *at law* is necessarily incidental to a breach of contract claim where the failure of the breaching party to account leaves the injured party unable to calculate the money owed under the contract."  Guzzi v. Morano, Case No. 10-1112, 2011 WL 4631927, at *12, fn 9 (E.D. Pa. October 6, 2011) (emphasis added)(citing McGough, F.Supp.2d at 301–02 (applying Pennsylvania law)).

The Schobs have plausibly alleged a breach of contract claim against SBS, arising from SBS' alleged conduct in violation of the Schob Agreement, FAC ¶ 265(f), (g), (i).  The Schobs have further alleged that as a result of SBS' breach, "the Schobs have incurred damages in an undetermined amount."  Id. at ¶ 266.  As the Schobs' breach of contract claim as to SBS survives in this present action, and the Schobs have alleged

under the contract.  McGough, 177 F.Supp.2d at 301.

that as a result of SBS' breach they are unable to determine the amount allegedly owed them, their cause of action for accounting at law survives as well.

As to the Schobs' plausibly alleged tortious claims, claims eight and nine for intentional and negligent misrepresentation, respectively, against SBS and SAI, an accounting at law is inappropriate as the Schobs are not alleging the breach of an express agreement with these claims.  As mentioned above, to establish a right to an accounting in an action at law, a plaintiff must show that there was a valid contract, express or implied, between the parties.  <u>McGough</u>, 177 F.Supp.2d at 301.  An equitable accounting is similarly inappropriate as the Schobs have not alleged that a fiduciary relationship exists between Defendants SBS and SAI and the Schobs.  <u>See Aetna Life Insurance Company v. Huntingdon Valley Surgery Center</u>, Case No., 2015 WL 5439223, at *15 (E.D. Pa. Sept. 15, 2015)("'[a]n equitable accounting is improper where no fiduciary relationship exists between the parties....'").

The Schobs fail to allege any facts in their FAC that could plausibly transform the alleged debtor-creditor relationship between SBS and SAI and the Schobs into a fiduciary relationship.  The Schobs state simply that "Defendants are indebted to the Schobs for the reasons set forth above." FAC ¶ 337.  As such, the Court finds that the Schobs have not plausibly alleged

an accounting claim as to their tortious claims, intentional and negligent misrepresentation.  This Court **DENIES** Defendants' Motion to Dismiss the Schobs' accounting claim to the narrow extent as it applies to the Schobs' breach of contract claim against SBS.  This Court **GRANTS with prejudice** Defendants' Motion to Dismiss the Schobs' accounting claim as to all other allegations, because, as discussed above, an equitable accounting is inappropriate where there is no showing of an existing fiduciary relationship, and a legal accounting is incidental to a breach of contract claim.

> h.   *Declaratory Judgment Against all Defendants (claim one).*

In their first claim for relief, Plaintiffs seek declaratory judgment as to seven specific disputes that have arisen between USDA, Deluxe and SBS concerning their respective rights and duties under the SBS Distributor Agreements.[16]   FAC ¶ 255.

---

[16]The Schobs seek a  judicial determination that: "(a) SBS Distributors may source Safeguard products through any Approved Vendor and are not required to purchase from Deluxe or Preferred Suppliers; (b) Deluxe and SBS's BODP fees violate the SBS Distributor Agreements; (c) Deluxe and SBS['] inflated shipping and handling costs violate the SBS Distributor Agreements; (d) Deluxe and SBS have no right under the SBS Distributor Agreements to obtain 'rebates' from any Approved Vendors; (e) Deluxe and SBS have no right under the SBS Distributor Agreements to impose a 2% Net 30 Program on non-preferred Approved Vendors; (f) Deluxe and SBS's BAM program, as implemented, violates the SBS Distributors' rights to Customer Protection; and (g) Deluxe and SBS may not require a general legal release as a condition of transferring the distributorship." Id. at ¶ 259.

In order to maintain a claim under the Declaratory Judgment Act, "a plaintiff must establish...sufficient immediacy and reality to warrant issuance of a declaratory judgment.'"  <u>Scott v. Pasadena Unified School District</u>, 306 F.3d 646, 658 (9th Cir. 2002); <u>see also</u> <u>Aydin Corp. v. Union of India</u>, 940 F.2d 527, 529 (9th Cir. 1991).  Although "[t]he existence of another adequate remedy does not *preclude* a judgment for declaratory relief in cases where it is appropriate," Fed. R. Civ. Proc. 57 (emphasis added), "the availability of other adequate remedies *may* make declaratory relief inappropriate ...."  <u>StreamCast Networks, Inc. v. IBIS LLC</u>, Case No. 05-04239, 2006 WL 5720345, *4 (C.D. Cal. May 2, 2006).  As such, courts have found that "a breach of contract claim resolved all questions regarding contract interpretation, rendering declaratory judgment 'duplicative.'"  <u>Ricon</u>, at *6; <u>Smithkline Beecham Corp. v. Continental Ins. Co.</u>, Case No. Civ.A. 04-2252, 2004 WL 1773713, *1 (E.D. Pa. Aug. 4, 2004).

Here, Plaintiffs' declaratory judgment claim is nothing more than a duplication of their breach of contract claim.  <u>See</u> FAC ¶ 265; <u>see also</u> <u>id.</u> at ¶ 255.  Further, Plaintiffs have not alleged any facts showing that Plaintiffs require the immediacy of a judicial declaration.  Plaintiffs appear to seek judicial declaration not as a preventative measure, but as a remedial measure to address previously alleged breach

of contract claims.  As this Court similarly held in
StreamCast Networks, determining these identical
allegations in the context of a judicial declaration,
in addition to the Schobs' breach of contract claim,
would be duplicative.  2006 WL 5720345 at *4.  The
declaratory relief claim is hereby dismissed as
duplicative and this Court **GRANTS with prejudice**
Defendants' Motion to Dismiss as to Plaintiffs'
declaratory judgment claim.  Based on the allegations
currently before this Court, it is apparent that
Plaintiffs will not be able to cure their declaratory
judgment claim as all allegations in support of this
claim are merely duplicative recitations of their
breach of contract claim, indicating that Plaintiffs'
declaratory judgment claim is entirely based on and
adequately represented within their breach of contract
claim.  Further, Plaintiffs put forth this claim in
their original Complaint, and have already been granted
leave to amend and plausibly allege this claim.  As
such, to avoid undue delay to this litigation and
prejudice to Defendants, this Court declines to give
Plaintiffs further leave to amend their declaratory
judgment claim.  See Eminence Capital, LLC, 316 F.3d at
1052.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part**
**and DENIES in part** Defendant's Motion to Dismiss First
Amended Complaint as to the Schob Plaintiffs [26].  The

Court **GRANTS with prejudice** Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) as to Plaintiffs' declaratory judgment claim.  The Court further **GRANTS with prejudice** Defendants' Motion to Dismiss as to the Schobs' claims for tortious interference with contractual relations and intentional interference with prospective economic advantage.  The Court further **GRANTS with prejudice** Defendants' Motion to Dismiss as to the Schobs' claim for conversion.  The Court **DENIES** Defendants' Supplemental Request for Judicial Notice [34]. The Court **DENIES** Defendants' Motion to Dismiss for lack of personal jurisdiction under F.R.C.P. 12(b)(2) as to Defendants Deluxe and SAI.  The Court further **DENIES** Defendants' Motion to Dismiss pursuant to F.R.C.P. 12(b)(6) as to the Schobs' claims for breach of the implied covenant of good faith and fair dealing, breach of contract, intentional misrepresentation, negligent misrepresentation, and accounting, to the narrow extent as it applies to the Schobs' breach of contract claim against SBS.

**IT IS SO ORDERED.**

DATED: November 17, 2015          s/RONALD S.W. LEW

                                  **HONORABLE RONALD S.W. LEW**
                                  Senior U.S. District Judge