JS - 6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED SAFEGUARD DISTRIBUTORS ASSOCIATION, INC., a Georgia corporation; GREG SCHOB, an individual; VICKI SCHOB, an individual; and SCHOB AND SCHOB, INC., a California corporation,<br><br>                    Plaintiffs,<br><br>    v.<br><br>SAFEGUARD BUSINESS SYSTEMS, INC., a Delaware corporation; SAFEGUARD ACQUISITIONS, INC., a Delaware corporation; DELUXE CORPORATION, a Minnesota corporation; and DOES 1-10,<br><br>                    Defendants. | 2:15-CV-03998 RSWL (AJW)<br><br>**ORDER re: UNITED SAFEGUARD DISTRIBUTORS ASSOCIATION, INC.'S MOTION FOR RECONSIDERATION OF THE COURT'S NOVEMBER 17, 2015 ORDER** [49] |

    Currently before the Court is Plaintiff United
Safeguard Distributors Association, Inc.'s ("Plaintiff"
or "USDA") Motion for Reconsideration of the Court's
November 17, 2015 Order ("Motion") [49].  Plaintiff

seeks reconsideration of this Court's November 17, 2015
Order (hereinafter "November 17 Order") [41] pursuant
to Federal Rules of Civil Procedure Rule 60(a), 60(b),
and Local Rule 7-18.

Plaintiff is correct in arguing that this Court's
previous Order dismissing Plaintiff's declaratory
judgment claim was erroneously predicated on the
misunderstanding that Plaintiff joined with the
remaining Plaintiffs in a breach of contract claim in
their First Amended Complaint.  However, for reasons
discussed below, the Court **DENIES** Plaintiff's Motion
for Reconsideration [49].

**I.   BACKGROUND**

**A.   <u>Factual Background</u>**

1.   <u>The Parties</u>

Plaintiff USDA is incorporated in Georgia and has
an office in La Mirada, California.  FAC ¶ 27.  USDA is
a membership organization composed of Safeguard
franchises and distributors, founded in April 1997.
FAC ¶ 27.  Plaintiff Schob & Schob, Inc. is
incorporated in California with its principal office in
Fresno, California.  <u>Id.</u> at ¶ 29.  Plaintiffs Vicki and
Greg Schob are individuals residing in or near Fresno,
California.  <u>Id.</u> at ¶¶ 30-31.

Defendant SBS is a Delaware corporation with its
principal place of business in Dallas, Texas.  <u>Id.</u> at ¶
32.  Defendant SAI is a Delaware corporation with its
principal place of business in Dallas, Texas.  <u>Id.</u> at ¶

2

33.  Defendant Deluxe is a Minnesota corporation with
its principal place of business in Shoreview,
Minnesota.  Id. at ¶ 34.  Deluxe, SBS, and SAI are
sellers of Safeguard products, including business forms
and systems, apparel, and other business services to
small businesses.  Id. at ¶ 1.  Deluxe acquired SBS in
2004.  Id. at ¶ 6.  SAI is a wholly-owned subsidiary of
Deluxe.  Id. at ¶ 12.

     2.  The SBS Distributor Agreements

     Since 1972, various distributors ("SBS
Distributors") such as the Schobs have engaged in the
sale of Safeguard products and thereby entered into SBS
Distributor Agreements with SBS.  Id. at ¶ 2.  The SBS
Distributor Agreements are uniform with respect to
many, but not all, of their provisions.  Id.  The
material provisions of the SBS Distributor Agreements
that are uniform throughout are those provisions that
grant the SBS Distributors protection against
competition for sales of Safeguard products to prior
customers by "(1) Safeguard itself, (2) all Safeguard
Distributors and franchisees, and (3) any other third
party engaged in the offer and sale of Safeguard
products."  Id. at ¶ 3.  Specifically, pursuant to the
SBS Distributor Agreements, SBS Distributors are
granted thirty-six months of exclusive rights to all
commissions from customers they solicit.  Id.
Additionally, when an SBS Distributor solicits a
subsequent order from that customer, the Distributor

has an additional thirty-six months of exclusive rights
to commissions from that customer.  Id.  Further, SBS
Distributors have the "unqualified right" to
participate in commissions generated through sales to
that customer for up to five years after the
termination of their contracts with SBS - whether they
have been terminated with or without cause.  Id. at ¶
4.  These rights (referred to by Plaintiffs throughout
their First Amended Complaint and their Opposition to
Defendants' Motion to Dismiss as "Customer Protection")
apply to all of the SBS Distributors' customers for
Safeguard products ("the Protected Customers").  Id.

     Prior to Deluxe's acquisition of SBS, SBS
Distributors took part in the "Sourced Products
Program," in which SBS Distributors placed wholesale
purchase orders for Safeguard products with vendors
approved by SBS ("Approved Vendors") to supplement the
Distributors' Safeguard product offerings to customers.
Id. at ¶¶ 55-56.  In 1997, SBS implemented the Billing
Only Distributor Paid ("BODP") Program so that SBS
Distributors would pay Approved Vendors directly,
instead of SBS paying them.  Id. at ¶¶ 61-62.  In 2008,
Deluxe, having acquired SBS, launched its Business
Acquisitions and Mergers ("BAM") Program.  Id. at ¶ 12.
Under the BAM Program, Deluxe acquires independent non-
SBS distributor businesses in the small business forms,
supplies, and services product market.  Id. at ¶ 13.
The BAM program is "designed to maximize Deluxe

4

insourcing (the percentage of products sold or
manufactured by Deluxe), [and thereby] increase the
amount of revenue Deluxe obtains from rebates and
cross-sell[ing] Deluxe products to new customers, who
used to buy from Deluxe's competitors.  The BAM Program
is also designed to expand Deluxe's range of products."
Id.

3.   Plaintiffs' Allegations in their FAC

a. *USDA's Standing*

Plaintiffs allege that USDA has standing to
maintain this action because its members have suffered
injury-in-fact by conduct of each of the Defendants.
FAC ¶ 41.  USDA asserts that neither its claim nor
request for relief requires the participation of USDA's
individual members.  FAC ¶ 44.

b. *Plaintiffs' Declaratory Judgment Claim
against all Defendants*

In their First Amended Complaint, Plaintiffs seek a
declaratory judgment against all Defendants, while the
remaining ten claims are brought specifically by the
Schobs against various Defendants.  Id. at ¶¶ 253-261.

Plaintiffs allege that Defendants implemented a
"scheme" to drive SBS Distributors out of business by
effectively eliminating Defendants' competition for the
sale of Safeguard products.  Id. at ¶¶ 1, 107.
Plaintiffs allege that Deluxe increased fees,
threatened SBS Distributors, and implemented policies
designed to reduce SBS Distributors' sales commissions.

1   Id. at ¶¶ 9-11, 72, 77, 91, 95, 101, 105-106, 110, 115.

2   Plaintiffs allege that Deluxe forced SBS Distributors

3   to implement a "percentage schedule" for the BODP

4   Program which tripled fees for products sourced from

5   Approved Vendors other than Deluxe, effectively

6   discouraging SBS Distributors from using Approved

7   Vendors.  Id. at ¶¶ 6, 9.  Plaintiffs allege that the

8   increased fees are designed to encourage SBS

9   Distributors to source products from Deluxe, or where

10  Deluxe doesn't manufacture the product, to source from

11  what Deluxe and SBS characterize as "Preferred

12  Supplies" or "Preferred Vendors."  Id.  Plaintiffs

13  allege that the "Preferred Suppliers" pay Deluxe "kick-

14  backs" or "rebates" which exceed 7% of the Preferred

15  Suppliers gross sales.  Id.

16      Additionally, Plaintiffs assert that Deluxe has

17  recently implemented a new policy of revenue

18  enhancement which gives Deluxe a 2% rebate from

19  Distributors when Deluxe makes payments to "Approved

20  Vendors" ("2% Net 30"), rather than "Preferred

21  Suppliers."  Id. at ¶¶ 160-166.  Plaintiffs allege that

22  the 2% rebate to Deluxe is unreasonable and not

23  reflected in SBS Distributors' invoices.  Plaintiffs

24  argue that the rebate inflates the overall wholesale

25  prices for the SBS Distributors, thereby making sales

26  to Approved Vendors even more difficult.  Id.

27      Plaintiffs further allege that Defendant Deluxe

28  used Defendant SAI to acquire non-SBS Distributor

businesses through the BAM Program to compete with and take customers from SBS Distributors, in direct violation of the alleged Customer Protection policies. Id. at ¶¶ 12-16, 140-154, 156, 159, 180, 183, 187. Plaintiffs allege that these acquisitions were made in an effort to terminate their SBS Distributor Agreements.  Id.  Plaintiffs further allege that Defendants allow the newly acquired distributors to sell products at prices below what SBS Distributors are charged.  Id. at ¶¶ 17, 189.

Next, Plaintiffs contend that Defendants will not allow SBS Distributors to acquire other distributors nor sell their business to another distributor without executing a general release of claims against Deluxe and its subsidiaries (the "General Release").  Id. at ¶¶ 19-22, 220, 223.  Plaintiffs allege that as a result of Defendants' actions, SBS Distributors' customer relationships have been harmed and Plaintiffs have suffered losses of prospective contracts and prospective economic advantages.  Id. at ¶¶ 23, 288-298, 308-314.

As a remedy for these alleged harms, Plaintiffs seek a judicial declaration as follows: (a) The BODP fees violate the SBS Distributor Agreements; (b) SBS Distributors can purchase from any otherwise qualified Approved Vendors and are not contractually mandated to purchase from Deluxe; (c) Deluxe and SBS have no right to inflate shipping and handling costs under the SBS

Distributor Agreements; (d) SBS Distributors are not required to purchase products from Preferred Suppliers; (e) SBS and Deluxe are required to enforce the Customer Protection provisions of the SBS Distributor Agreements; (f) SBS and Deluxe cannot require a general release as a condition to the transfer of a SBS Distributor franchise; (g) under the SBS Distributor Agreements, Deluxe and SBS have no right to retain "rebates" from the Preferred Supplier Program or demand payment terms of 2% Net 30.  Id. at ¶¶ 97, 108, 128, 152, 191, 225, 252; see also id. at ¶¶ 253-261. Plaintiffs Greg Schob, Vicki Schob, and Schob and Schob, Inc. ("the Schob Plaintiffs") brought a separate breach of contract claim against Defendants based on nearly identical grounds as those supporting Plaintiffs' declaratory judgment claim.[1]

---

[1]The Schob Plaintiffs claim SBS breached the Schobs' Agreement in the following nine ways: (1) Requiring the Schobs to purchase from Deluxe's Preferred Suppliers, including Deluxe itself; (2) Requiring Preferred Suppliers to pay rebates or "kickbacks" at the Schobs' expense; (3) Imposing 2% Net 30 payment terms on non-preferred Approved Vendors at the Schobs' expense; (4) Charging BODP fees far in excess of actual administrative costs; (5) Arbitrarily increasing shipping and handling costs for its own profits; (6) Failing to take action to prohibit other SBS Distributors from selling to the Schobs' Protected Customers, pursuant to the alleged Customer Protection rights in the Schob Agreement; (7) Failing to pay the Schobs all commissions generated by sales to its Protected Customers pursuant to the alleged Customer Protection rights; (8) Failing to provide the Schobs with copies of all inquiries and other correspondence related to its Protected Customers, together with copies of SBS's reply to such inquiries or correspondence; and (9) Failing to notify the Schobs, with reasonable promptness, of any event that may reasonably be expected to have a material adverse effect upon the sale of Safeguard Systems to its

**B.   Procedural History**

Plaintiff USDA filed its initial Complaint on May 27, 2015 [1].  On July 2, 2015, USDA filed its First Amended Complaint including the Schob Plaintiffs [17]. On July 20, 2015 Defendants filed two Motions to Dismiss as to Plaintiffs USDA and the Schob Plaintiffs, respectively [24, 26].  On July 28, 2015, Plaintiffs submitted their respective Oppositions to Defendants' Motions to Dismiss [30, 31].  On August 4, 2015, Defendants submitted their Replies in support of their Motions to Dismiss the First Amended Complaint [33, 35].

On November 17, 2015, this Court granted in part and denied in part Defendants' Motion to Dismiss as to the Schob Plaintiffs [41].  Also on November 17, 2015, this Court granted in part and denied in part Defendants' Motion to Dismiss as to Plaintiff USDA [42].  On January 22, 2016, Plaintiff USDA and the Schob Plaintiffs filed their respective Motions for Reconsideration [49, 50].  On February 2, 2016 Defendants filed their Oppositions to Plaintiffs' Motions [51, 52].  On February 9, 2016, Plaintiffs filed their Replies [54, 55].

On February 22, this Court granted the parties' Stipulation to Stay Further Proceedings Regarding the Schob Plaintiffs' Claims [57].  On April 5, 2016 this

Protected Customers.  FAC ¶ 265.

1  Court granted a Stipulation to Dismiss the Schob
2  Plaintiffs' claims with prejudice [60].  The Schob
3  Plaintiffs were thus dismissed from the matter, and
4  accordingly, the Schob Plaintiffs' Motion for
5  Reconsideration was terminated.  USDA's Motion for
6  Reconsideration remains.

**II.  DISCUSSION**

**A.  <u>Legal Standards</u>**

1.  <u>Motion for Reconsideration</u>

Local Rule 7-18 provides the basis for bringing a
motion for reconsideration in the Central District of
California.  The Local Rule provides, in relevant part:
"[a] motion for reconsideration of the decision on any
motion may be made only on the grounds of (a) a
material difference in the fact or law form that
presented to the Court before such decision that in the
exercise of reasonable diligence could not have been
known to the party moving for reconsideration at the
time of such decision, or (b) the emergence of new
material facts or a change of law occurring after the
time of such decision, or (c) a manifest showing of a
failure to consider material facts presented to the
Court before such decision.  No motion for
reconsideration shall in any manner repeat any oral or
written argument made in support of or in opposition to
the original motion."  L.R. 7-18.

"Whether to grant a motion for reconsideration
under Local Rule 7-18 is a matter within the court's

discretion." <u>Daghlian v. Devry Univ., Inc.</u>, 582
F.Supp.2d 1231, 1251 (C.D. Cal. Oct. 10, 2007).  "A
motion for reconsideration should not be granted,
absent highly unusual circumstances." <u>389 Orange St.
Partners v. Arnold</u>, 179 F.3d 656, 665 (9th Cir. 1999).
Motions for reconsideration "are disfavored and are
rarely granted." <u>Resolution Trust Corp v. Aetna
Casualty & Sur. Co.</u>, 873 F.Supp. 1386, 1393 (D. Ariz.
1994).

Pursuant to Federal Rule of Civil Procedure 60(a),
"[t]he court may correct a clerical mistake or a
mistake arising from oversight or omission whenever one
is found in a judgment, order, or other part of the
record."  Fed. R. Civ. P. 60(a).

2. <u>Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1)</u>

Federal Rule of Civil Procedure 12(b)(1) authorizes
a court to dismiss claims over which it lacks proper
subject matter jurisdiction.  A court is free to
determine jurisdiction on a motion to dismiss for lack
of jurisdiction under Rule 12(b)(1) "unless the
jurisdictional issue is inextricable from the merits of
a case." <u>Kingman Reef Atoll Invs., L.L.C. v. United
States</u>, 541 F.3d 1189, 1195 (9th Cir. 2008) (citing
<u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir.
1987)).

Article III requires a case or controversy in order
for federal courts to have subject matter jurisdiction.
U.S. Const. Art. 3, § 2.  The standing doctrine

1  eliminates claims that fail to create a case or

2  controversy.  <u>Summers v. Earth Island Inst.</u>, 555 U.S.

3  488, 493 (2009); <u>Cetacean Cmty. v. Bush</u>, 386 F.3d 1169,

4  1174 (9th Cir. 2004).  A defendant may challenge a

5  plaintiff's standing in a motion to dismiss under

6  F.R.C.P. 12(b)(1) for "lack of subject-matter

7  jurisdiction."  <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th

8  Cir. 2000).

9       Standing is a jurisdictional requirement that

10  precedes analysis of the merits.  <u>Krottner v. Starbucks</u>

11  <u>Corp.</u>, 628 F.3d 1139, 1141 (9th Cir. 2010).  The party

12  seeking to invoke the jurisdiction of the federal

13  courts has the burden of alleging specific facts to

14  satisfy the three elements of constitutional standing.

15  <u>Schmier v. U.S. Court of Appeals for the Ninth Cir.</u>,

16  279 F.3d 817, 821 (9th Cir. 2002).  The plaintiff must

17  establish (1) a legally recognized injury, (2) caused

18  by the named defendant that is (3) capable of legal or

19  equitable redress.  <u>Id.</u>  "Injury in fact," as required

20  for federal standing, is an invasion of a legally

21  protected interest which is (a) concrete and

22  particularized, and (b) actual or imminent, not

23  "conjectural" or "hypothetical," where "particularized"

24  means simply that the injury must affect the plaintiff

25  in a personal and individual way.  U.S. Const. Art. 3,

26  § 2, cl. 1.

27  //

28  //

**B.  Analysis**

    1.  <u>The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim</u>

       a.  *USDA Lacks Standing to Bring its Claim*

The standing doctrine eliminates claims that fail to create a case or controversy.  <u>Summer v. Earth Island Inst.</u>, 555 U.S. 488, 493 (2009); <u>Cetacean Cmty. v. Bush</u>, 386 F.3d 1169, 1174 (9th Cir. 2004) (citation omitted).  A defendant may challenge a plaintiff's standing in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for "lack of subject-matter jurisdiction."  <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000).

A plaintiff has the burden of alleging specific facts sufficient to establish standing.  <u>Schmier v. U.S. Court of Appeals for the Ninth Cir.</u>, 279 F.3d 817, 821 (9th Cir. 2002).  The Plaintiff bears the burden of establishing standing at each and every stage of the litigation.  <u>Krottner</u>, 628 F.3d at 1141.  Additionally, a plaintiff is required to establish "'standing for each claim he seeks to press' and 'for each form of relief that is sought.'"  <u>Davis v. Fed. Elec. Comm'n</u>, 554 U.S. 724, 734 (2008).  This analysis requires "careful judicial examination of a complaint's allegations."  <u>Allen v. Wright</u>, 468 U.S. 737, 752 (1984).

//

//

1

2

        i.   *Plaintiff no longer has standing as a*
           *co-party of the Schob Plaintiffs.*

    This Court finds, as it did in its November 17 Order [41], that Plaintiff lacks standing to bring its declaratory judgment claim.  In its original Opposition [30] to Defendants' Motion to Dismiss, Plaintiff argues that it need not have independent standing to pursue its claim because the Schob Plaintiffs had standing to pursue their claims.  Opp'n 3:12-4:2, ECF No. 30.

    Plaintiff is correct in asserting that if "the Court finds one of the named plaintiffs has standing to pursue all of the asserted claims, it need not find that the other plaintiffs also have standing for those plaintiffs to remain in the suit."  Opp'n 3:14-17, ECF No. 30 (citing Public Citizen, Inc. v. Miller, 992 F.2d 1548 (11th Cir. 1993)).  However, the Schob Plaintiffs have since settled and dismissed all of their claims against Defendants in this matter, and are no longer parties to this action [60].  Consequently, Plaintiff can no longer establish standing through the Schob Plaintiffs to bring its declaratory judgment claim against Defendants.  Rather, in order to proceed with its declaratory judgment claim, Plaintiff must sufficiently show that it has associational standing. This Court finds Plaintiff has not met its burden, in either its prior filings or the present Motion, to proffer specific facts to establish standing.

//

1

> ii. *Plaintiff does not meet its burden to allege specific facts establishing associational standing.*

4    Associational standing is a narrow and limited
5  exception to the general rule that litigants must
6  assert their own rights in order to have standing.
7  <u>Black Faculty Ass'n of Mesa Coll. v. San Diego Cmty.</u>
8  <u>Coll. Dist.</u>, 664 F.2d 1153, 1156 (9th Cir. 1981).   In
9  order for an association to have standing, (1) its
10 members must otherwise have standing to sue in their
11 own right, (2) the interests the association seeks to
12 protect are germane to its purpose, and (3) neither the
13 claim asserted nor the relief requested require the
14 participation of individual members in the lawsuit.
15 <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333,
16 343 (1977).   A plaintiff must establish that it has
17 satisfied *each* of the elements of standing and mere
18 "labels and conclusions" are insufficient.   <u>Bell Atl.</u>
19 <u>Corp. v. Twombly</u>, 127 S. Ct. 1955, 1964-65 (2007).

20    Plaintiff's sole claim in this matter, for
21 declaratory judgment, asks the Court to declare the
22 respective rights and duties of all individual members
23 of Plaintiff USDA under the SBS Distributor Agreements.[2]

24

25    [2]Specifically, Plaintiff seeks a judicial declaration
26 regarding the following: "(a) Whether under the SBS Distributor
   Agreement, SBS can require the SBS Distributors to purchase from
27 Deluxe's Preferred Suppliers, including Deluxe itself; (b)
   Whether under the SBS Distributor Agreement, SBS can require
28 Preferred Suppliers to pay rebates or "kickbacks" at the expense
   of the SBS Distributors; (c) Whether under the SBS Distributor

See FAC ¶ 255. First and foremost, "SBS Distributor Agreements" is a broad label that Plaintiffs use to describe various contracts between SBS Distributors and SBS, all of which are individualized and signed by the specific Distributors to whom they apply. As is evident in comparison of the Schob Plaintiffs' Agreement with SBS [17-1] and another SBS Distributor Agreement between Distributor Stephen D. Venture and SBS ("Venture Agreement"), not all SBS Distributor Agreements are identical. Compare FAC Ex. A, ECF No. 17-1, with FAC Ex. E, ECF No. 17-1. In fact, SBS Distributor Agreements contain differing addendums and amendments that affect the rights and the duties of those signatories / distributors regarding their contract with SBS. For this initial reason, it is clear to this Court that the participation of the Distributors is required to resolve the disputes at issue in Plaintiff's declaratory judgment claim.

Further, Plaintiff cannot establish associational standing because its declaratory judgment claim

---

Agreement, SBS can impose 2% Net 30 payment terms on non-preferred Approved Vendors at the expense of the SBS Distributors; (d) Whether under the SBS Distributor Agreement, the BODP fees charged by SBS violate the SBS Distributors Agreements; (e) Whether under the SBS Distributor Agreement, SBS can arbitrarily increase shipping and handling costs for its own profits unrelated to the expenses of shipping and handling; (f) Whether the BAM program, as implemented, violates the SBS Distributors' rights to Customer Protection; and (g) Whether under the SBS Distributor Agreement, SBS may require a general release from the purchasing SBS Distributor as a condition of transferring another SBS Distributor's Agreement." FAC ¶ 255, ECF No. 17.

requires fact-specific inquiries, which the Supreme Court has held cannot support an establishment of associational standing.[3]  In fact, associational standing is not established unless "*neither the claim asserted* nor the relief requested requires the participation of individual members in the lawsuit." Hunt, 432 U.S. at 343 (emphasis in original); see, e.g. Rent Stabilization Association v. Dinkins, 5 F.3d 591 (2d Cir. 1993).  The Ninth Circuit has only permitted associational standing where an association seeks declaratory relief in cases that involve pure questions of law.  See, e.g., Columbia Basin Apt. Ass'n v. City of Pasco, 268 F.3d 791, 799 (9th Cir. 2001) (addressing the constitutionality of a city ordinance); Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal., 159 F.3d 1178, 1181 (9th Cir. 1998) (same); Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity, 950 F.2d 1401, 1408 (9th Cir. 1991) (seeking to enjoin enforcement of city ordinance).  In cases where an association's declaratory relief claim involves more than just pure legal issues, requiring factual inquiry, the Ninth Circuit has held that the

_____

[3]In International Union, United Automotive, Aerospace & Agricultural Implement Workers of America v. Brock, the Supreme Court clarified that the application of the third Hunt requirement necessarily precluded associational standing unless the association's claim raises a pure question of law.  477 U.S. 274, 287 (1986).  The Court reasoned that where a complaint raises anything other than a pure legal question, the issues implicated individualized factual inquiries that Hunt prohibits. Id.

association lacked standing.  See, e.g., Spinedex Physical Therapy USA Inc. V. United Healthcare of Arizona, Inc., 770 F.3d 1282, 1292 (9th Cir. 2014) (finding that the association lacks standing because the participation of the beneficiaries of a healthcare plan was required).

The Court finds the present case is similar to Spinedex in that the declaratory relief sought by the Spinedex plaintiffs required the court to consider the "individual situations of ACS members." Id. at 1293. The Ninth Circuit reasoned: "Because of [the] multiple variations, specific to individual members of ACS, we conclude that the violations of which ACS complains are not susceptible to judicial treatment as 'systematic policy violations that . . . make extensive individual participation necessary,'" and thus plaintiffs did not establish associational standing.  Id. at 1292.

Similarly, in the present case (as we have seen in comparison of the Schobs' Agreement with the Venture Agreement above), each SBS Distributor Agreement contains amendments and addendums producing multiple variations specific to the individual Distributors. This makes judicial determination of Plaintiffs' declaratory relief claim on the Distributors' behalf inappropriate and unwarranted.  The Schob Plaintiffs' claims may not be common to the entire association membership, and in any event, this Court finds Plaintiff did not meet its burden in establishing as

such with factual specificity.  Associational standing
has not been established.  The Court will not intervene
at this juncture to declare the rights of all
Plaintiff's members as they arise from differing,
independent contracts.

> iii.   *Plaintiff has not shown sufficient*
> *immediacy to establish an "injury-*
> *in-fact."*

Finally, this Court finds Plaintiff has not met its
burden to establish immediacy.  Specifically, Plaintiff
has not shown it suffered an "injury-in-fact" that is
imminent.  To plausibly allege an "injury-in-fact"
establishing Article III standing, a plaintiff must
proffer specific facts showing "a credible threat of
harm," and that the harm is "both real and immediate,
not conjectural or hypothetical."  <u>Krottner</u>, 628 F.3d
at 1143 (internal citations omitted).  It is
Plaintiff's burden to allege specific facts
establishing standing at each and every stage of the
litigation.  <u>Id.</u> at 1141.

As discussed in this Court's previous Order
addressing Plaintiffs' declaratory judgment claim [41],
"Plaintiffs have not alleged any facts showing that
Plaintiffs require the immediacy of a judicial
declaration.  Plaintiffs appear to seek judicial
declaration not as a preventative measure, but as a
remedial measure to address previously alleged breach
of contract claims."  Order dated 11/17/15, 55:24-56:1.

1   Although Plaintiffs were made aware of the
2   deficiency in their declaratory judgment claim in this
3   Court's prior Order [41], which Plaintiff concedes in
4   the present Motion for Reconsideration, <u>see</u> Mot. for
5   Reconsideration 9:15-10:4, ECF No. 49, Plaintiff
6   nonetheless proffers no additional facts in support of
7   its contention that it will imminently suffer an injury
8   to warrant standing.  Furthermore, Plaintiff makes no
9   showing of how it would remedy the deficiency in its
10  Reply.  For this additional reason, the Court finds
11  that Plaintiff lacks standing to bring its declaratory
12  judgment claim.  Accordingly, this Court lacks subject
13  matter jurisdiction over Plaintiff's claim.  The Court
14  **DENIES** Defendant's Motion for Reconsideration [49] for
15  this additional reason.

16      2.   <u>Declaratory Relief under Rule 57 is not</u>
17           <u>Warranted.</u>

18      Federal Rules of Civil Procedure Rule 57 "govern[s]
19  the procedure for obtaining a declaratory judgment
20  under 28 U.S.C. §§ 2201."  Fed. R. Civ. P. 57.  "When
21  declaratory relief will not be effective in settling
22  the controversy, the court may decline to grant it."
23  <u>Id.</u>; <u>McGraw-Edison Co. v. Preformed Line Products Co.</u>,
24  362 F.2d 339 (9th Cir. 1966).  "A declaratory judgment
25  is appropriate when it will 'terminate the controversy'
26  giving rise to the proceeding.  Inasmuch as it often
27  involves only an issue of law on undisputed or
28  relatively undisputed facts, it operates frequently as

1  a summary proceeding, justifying docketing the case for

2  early hearing as on a motion." Fed R. Civ. P. 57,

3  "Notes of Advisory Committee on Rules."

4      In the present case, this Court finds that granting

5  Plaintiff's declaratory judgment claim against

6  Defendants would not "terminate the controversy" that

7  gave rise to this matter.  This is evident by the Schob

8  Plaintiffs' participation in this matter, and by the

9  fact that "[Plaintiff's] Counsel is concurrently

10 representing other Safeguard [D]istributors under the

11 same legal theories as set forth in this action in both

12 a state court proceeding (filed August 26, 2014) and a

13 separate arbitration (Demand served February 19, 2015)

14 in Idaho." See Declaration of Wesley W. Lew ¶ 19, ECF

15 No. 53.  In these proceedings, SBS Distributors are

16 pursuing alleged individualized harm arising out of

17 their specific SBS Distributor Agreements.

18      Furthermore, the present matter does not simply

19 "involve[] only an issue of law on undisputed or

20 relatively undisputed facts," but rather requires

21 extensive factual determinations.  Fed R. Civ. P. 57,

22 "Notes of Advisory Committee on Rules."  It is not

23 apparent to this Court that the judicial declaration

24 sought by Plaintiff would terminate the controversy at

25 hand.

26      3.   USDA should not be afforded leave to amend

27      "A district court need not grant leave to amend

28 where the amendment: (1) prejudices the opposing party;

(2) is sought in bad faith; (3) produces an undue delay
in litigation; or (4) is futile." AmerisourceBergen
Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th
Cir. 2006). "[L]eave to amend is addressed to the
sound discretion of the court, and must be decided upon
the facts and circumstances of each particular case."
Caddy-Imler Creations, Inc. v. Caddy, 399 F.2d 79, 84
(9th Cir. 1962).

While Plaintiff is correct in asserting that the
Court's stated basis for dismissing its claim in its
previous Order [42] was in error, additional grounds
exist upon which this Court must dismiss Plaintiff's
claim.  Specifically, Plaintiff has not shown imminence
of an "injury-in-fact," and thus it lacks standing to
bring its claim. See Order dated 11/17/15, 55:24-56:1.

Plaintiff has already been given leave to amend
this claim, see Order dated 07/1/15, ECF No. 16, and as
such this Court finds further leave to amend would
produce an undue delay in litigation.  Additionally, as
Plaintiff has previously been made aware of the
deficiencies of its declaratory judgment claim, the
Court finds Plaintiff's failure to remedy these
deficiencies indicates that further leave to amend
would be futile.[4]  Further, Defendants have proffered

---

[4]Plaintiff argues that any defect in the First Amended
Complaint "can easily be cured" by amendment. See Mot. 9:23-
10:4.  However, despite the fact that this Court pointed out
specific deficiencies in its previous Order [41], Plaintiff's
present Motion fails to provide any further factual support for
its contention that it could cure its declaratory claim through a

evidence of the prejudice they would suffer if this case were reopened to allow Plaintiff to attempt for a third time to remedy their claim.  <u>See</u> Opp'n 17:10-18:2, ECF No. 52.

Upon review of the parties' filings and upon consideration of the repeated deficiencies of Plaintiff's declaratory judgment claim, this Court declines to give Plaintiffs further leave to amend their claim.  In doing so, this Court avoids further undue delay to this litigation and further prejudice to Defendants.  <u>See</u> <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Clerk shall close this action.  All pending dates on the Court's calendar are VACATED.

**IT IS SO ORDERED.**

DATED: May 17, 2016            <u>s/ RONALD S.W. LEW</u>
                               **HONORABLE RONALD S.W. LEW**
                               Senior U.S. District Judge

---

third opportunity to amend its Complaint.  <u>Id.</u>  Rather, Plaintiff simply argues that "in its Order addressing the Defendants' motion to dismiss the Schob Plaintiffs' claims, the Court found that the Schob Plaintiffs failed to plead the 'sufficient immediacy' element of their judicial declaration claim.  Should the Court now find that the USDA's pleading is equally lacking, the USDA would be able to correct the deficiency by alleging a myriad of facts" to show that Plaintiff requires immediate relief.  <u>Id.</u>  Plaintiff states in a conclusory fashion, "[b]ecause Defendants continue to enforce the above-stated policies and programs the immediacy element of a declaratory judgment claims has been (and, if necessary, can be) satisfied."  <u>Id.</u> at 11:21-12:1.